Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
Erik J. Halverson (SBN 333492)
Erik.Halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA  94111
Telephone: +1 415 882 8200
Facsimile: +1 415 882 8220

Benjamin E. Weed (pro hac vice)
Benjamin.Weed@klgates.com
Gina A. Johnson (pro hac vice)
Gina.Johnson@klgates.com
Melissa M. Haulcomb (pro hac vice)
Melissa.Haulcomb@klgates.com
Amanda C. Maxfield (pro hac vice)
Amanda.Maxfield@klgates.com
**K&L GATES LLP**
70 W. Madison
Suite 3300
Chicago, IL 60602
Telephone: +1 312 372 1121
Facsimile: +1 312 827 8000

*Attorneys for Plaintiff Koss Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOSS CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PLANTRONICS, INC. and POLYCOM, INC.,<br><br>　　　　　Defendants. | Case No. 21-cv-03854-JST<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Koss Corporation ("Koss"), files this first amended complaint for patent infringement against Plantronics, Inc. and Polycom, Inc. ("Plantronics" or "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including specifically 35 U.S.C. § 271, based on Plantronics's willful infringement of U.S. Patent Nos. 10,206,025 ("the '025 Patent"), 10,368,155 ("the '155 Patent"), 10,469,934 ("the '934 Patent"), 10,506,325 ("the '325 Patent"), 10,757,498 ("the '498 Patent"), and 10,848,852 ("the 852 Patent") (collectively "the Patents-in-Suit").

**THE PARTIES**

2.      Plaintiff Koss Corporation is a corporation existing under the laws of the State of Delaware having its principal place of business located at 4129 North Port Washington Avenue, Milwaukee, Wisconsin 53212.

3.      Koss markets a complete line of high-fidelity headphones and audio accessories. Koss's products, branded under the Koss brand name or private label brands, are sold at various retail chains throughout the United States and the world, including Walmart stores and other large brick-and-mortar establishments, as well as direct to customers in at least the following cities in this District:  San Jose, San Leandro, Richmond, Mountain View, San Ramon, Milpitas, Livermore, and Union City.

4.      Koss also serves as an Original Equipment Manufacturer ("OEM") for a customer in this Judicial District.  In this role, Koss manufactures OEM headphones sold under its customer's brand.

5.      On information and belief, Plantronics, Inc. is a Delaware Corporation with its principal place of business at 345 Encinal St., Santa Cruz, California 95060. Plantronics may be served through its registered agent CT Corporation System, 818 Seventh Street, Ste 930 Los Angeles, CA 90017. On information and belief, Plantronics, Inc. is registered to do business in the State of California and has been since at least May 24, 1989.

6.      On information and belief, Polycom, Inc. is a Delaware Corporation with its principal place of business at 345 Encinal Street, Santa Cruz, California 95060. Polycom, Inc. may be served through its registered agent CT Corporation System, 818 Seventh Street, Ste 930 Los

Angeles, CA 90017. On information and belief, Polycom, Inc. is registered to do business in the State of California and has been since at least May 17, 1991.

7. On information and belief, on or about March 28, 2018, Plantronics, Inc. acquired Polycom, Inc. On information and belief, by March 2019, Plantronics, Inc. and Polycom, Inc. integrated their business operations, management, facilities, and product offerings. On information and belief, the combined businesses of Plantronics, Inc. and its wholly-owned subsidiary Polycom, Inc. conducts their combined business operations under the name "Poly." On March 18, 2019, "Plantronics, Inc. . . . announced that the company will transform into Poly, a technology company focused on the human experience of communications and collaboration, aiming to make communication as rich and natural as in-person. Poly, which means, 'many' leverages the legendary audio and video expertise of Plantronics and Polycom . . . ." Meet Poly: Plantronics + Polycom Relaunches To Focus On Driving The Power Of Many, POLY WEBSITE, available at: https://www.poly.com/us/en/about/newsroom/plantronics-and-polycom-nowtogether-as-poly.

8. On information and belief, product development and marketing for the alleged infringing Plantronics and/or Polycom products takes place in Santa Cruz, California.

9. Plantronics has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

11. This Court has personal jurisdiction over Plantronics in this action because Plantronics has committed acts of infringement within the State of California and within this District through, for example, the sale of Plantronics headphones, such as Backbeat-branded headphones, both online and from the retail locations of its partners in this District. Plantronics regularly transacts business in the State of California and within this District. Plantronics engages in other persistent courses of conduct and derives substantial revenue from products and/or services

provided in this District and in California, and has purposefully established substantial, systematic, and continuous contacts within this District and should reasonably expect to be sued in a court in this District.  For example, Plantronics's principal place of business is in this District and it has a California registered agent for service.  Plantronics operates a website and various advertising campaigns that solicit sales of the infringing products by consumers in California and this District. Plantronics has entered into partnerships with numerous resellers and distributors to sell and offer for sale the various at-issue headphone or earphone products to consumers in this District, both online and in stores, and offers support service to customers in this District.  Given these contacts, the Court's exercise of jurisdiction over Plantronics will not offend traditional notions of fair play and substantial justice.

12.     Venue in the Northern District of California is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b).  Plantronics has at least one regular and established place of business in this District, including, at 345 Encinal St., Santa Cruz, California 95060.

13.     Plantronics has committed acts within this judicial district giving rise to this action. Plantronics continues to conduct business in this judicial district, including one or more acts of making, selling, using, importing and/or offering for sale infringing products or providing support service to Plantronics's customers in this District.

**KOSS'S LEGACY OF AUDIO INNOVATION**

14.     Koss was founded in 1953 as a television rental company in Milwaukee, Wisconsin.

15.     In 1958, John C. Koss invented the world's first SP/3 Stereophone as part of a "private listening system" that would enable the wearer to listen to a phonograph without disturbing others in the vicinity:

First Amended Complaint for Patent Infringement and Demand for Jury Trial

1
2
3
4
5
6
7
8
9
10



11
12    16.    The SP/3 Stereophone provided, for the first time, a high-quality stereophonic

13 headphone that approximated the sounds of a concert hall.

14    17.    John C. Koss demonstrated the SP/3 Stereophone at a Wisconsin audio show in

15 1958.  Initially designed to demonstrate the high-fidelity stereo sound that a portable phonograph

player delivered, these revolutionary SP/3 Stereophones became the hit of the show.

16    18.    The SP/3 Stereophone has since been enshrined in the Smithsonian Museum's

17 collection in Washington, DC, with John C. Koss delivering the SP/3 for enshrinement along with

18 an explanation of the story of the SP/3 in 1972:

19
20
21
22
23
24
25
26
27



28

First Amended Complaint for Patent Infringement and Demand for Jury Trial

19.     Koss's commitment to headphone development continued into the 1960s and beyond.  In 1962, Koss developed and brought to market the PRO/4 Stereophone, which was bestowed with Consumer Union Magazine's #1 choice award in 1963:



20.     Due to the success and quality of the Pro/4, the United States government awarded Koss with a contract to install fifty (50) Pro/4 units in the staff, press, and presidential quarters of Air Force One.  Passengers accessing the aircraft's state-of-the-art entertainment system listened to the system using the Pro/4:



21.     In 1970, Koss moved its World Headquarters to the current location at 4129 North Port Washington Ave., Milwaukee, Wisconsin:



22.     Also in 1970, Koss set the standard for full-size professional headphones with its Pro/4AA:



23.     At the time of introduction, the Pro/4AA was regarded as the first dynamic headphones to deliver true full frequency and high-fidelity performance with noise-isolating capabilities.

24.     Koss continued improving its Stereophone product line throughout the 1970s and into the 1980s.  In 1984, Koss introduced the Porta Pro, an acclaimed product that set performance and comfort standards for on-the-go listening:

First Amended Complaint for Patent Infringement and Demand for Jury Trial

1
2
3
4
5
6
7
8
9
10
11
12
13



14       25.      The Porta Pro continues to be one of the most popular headphone products around

15  the world, particularly because of its exceptional audio fidelity and performance capabilities.  In

16  fact, as recently as 2008, CNET awarded the Porta Pros a four-star rating of 8.3 (out of 10), with a

17  performance score of 9 (out of 10), stating that "there's no denying the sound quality here:  they're

18  the    ideal    companion    for    mobile    audiophiles    and    home    theater    enthusiasts."

19  (https://www.cnet.com/reviews/koss-portapro-with-case-review/).

20       26.      In 1965, Koss introduced the award-winning speaker, the Acoustech X, which was

21  heralded as a breakthrough product by Billboard Magazine, touting its concert hall quality and

22  ability to accurately amplify an acoustic guitar to large concert halls.  *Acoustic System Succeeds In*

23  *Classical Guitar Concert*, BILLBOARD, May 27, 1967, at 71.

24       27.      Following  on  Acoustech  X,  Koss  went  on  to  develop  a  number  of  additional

25  products:  the world's first computer maximized loudspeaker in 1976; the Kossfire speaker line in

26  the  1980s;  the  dynamic  audio/video  Dynamite  bookshelf  series  speaker  line;  a  line  of

27  portable/desktop computer speakers that employed a unique magnetic shield to protect nearby

28

First Amended Complaint for Patent Infringement and Demand for Jury Trial

1  computer video and data equipment; and an amplified portable loudspeaker, the M/100, in early
2  1987.

3          28.     In 1987, Koss pioneered one of the earliest completely wireless infrared speaker
4  systems:  the JCK 5000.  In 1986, Koss also unveiled a portable speaker, the KSC/50, which was
5  utilized by thousands of members of the United States military during the Gulf War in 1990.
6  Related to the KSC/50, Koss's KSC/5000 included a built-in amplifier.  Those products were
7  profiled in a Newsweek feature on October 12, 1987:





9          29.     Over the following years, Koss continued to expand its portable speaker offerings,
including by expanding into speakerphones for teleconferencing systems with the Speakeasy line,
followed by various additional wireless models for portable use.

30.     Elite musicians including Tony Bennett, Les Brown, and Frank Sinatra Jr., have used Koss headphones, including the Pro/4, while recording and/or performing.  Koss's official spokespeople have included music legends Mel "the Velvet Fog" Tormé and Doc Severinsen, the trumpet-playing bandleader for Johnny Carson's Tonight Show band.

31.     In 1979, John C. Koss was inducted into the Audio Hall of Fame.

32.     In 2000, John C. Koss was inducted into the inaugural class of the Consumer Electronics Hall of Fame.

33.     In 2004, John C. Koss was inducted into the Wisconsin Business Hall of Fame.

## KOSS DEVELOPS THE FIRST EVER TRUE WIRELESS HEADPHONES

34.     Continuing its culture of innovation in high-fidelity audio equipment, in the early 2000s, Koss began developing what became known as the "Striva" project.  The vision for the Striva project was borne out of Koss's recognition that wireless headphones were going to be an integral part of peoples' audio consumption.  In particular, Koss recognized that as radios were needing progressive less power and as batteries and other power sources became smaller and more efficient, people would eventually consume audio content through headphones wirelessly connected to some kind of a source, be it a handheld computing device or in the cloud.

35.     In the early 2000s, Koss began making substantial monetary investments in the Striva project, with the goal of bringing "True Wireless" listening to its loyal customers as the next in a long series of headphone innovations.

36.     Koss recognized that the future was a wireless world, complete with mobile internet connectivity that went beyond traditional hardwired, or computer-based, network topologies.  It recognized that wireless ubiquity was coming, and would extend to wearable devices, including Koss's area of expertise:  the headphone.

37.     With these recognitions in mind, Koss made a substantial commitment to investing in what it saw as the future of headphone technology.  This work eventually became the Striva project, and over the course of its work, Koss invested tens of millions of dollars developing chips, fabrication techniques, prototype headphones, and other related technology to bring the Striva vision to life.

38.     In particular, Koss's work on Striva resulted in the development of a system-on-chip smaller than a human fingertip that could provide audio and wireless communications processing on a low power budget for incorporation into headphones of various form factors:



39.     Koss's work to develop Striva also predicted some of the interactions that modern headphone users take for granted today.  In particular, Koss recognized early on that the inclusion of a microphone (with appropriate voice recognition software and circuitry) could provide a convenient, hands-free way to interact with wireless headphones.  Koss developed technology that could react to such voice prompts, and in fact implemented prototypes that reacted to users saying "Striva" into a headphone-mounted microphone to begin a voice-based interaction to, for example, switch tracks or adjust headphone volume.

40.     Koss also recognized a headphone concept that users today take for granted: different headphones for different applications.  In particular, as part of the Striva project, Koss developed different form factors with different performance capabilities depending on anticipated use.  Over-ear headphones provided users with higher-quality sound, ambient noise dampening capabilities, and better battery life (due to additional battery real estate), while in-ear headphones provided portability and capability in a smaller, less-intrusive package.

41.     Koss developed prototype in-ear headphones that relied on its chip development efforts, with working prototypes from the mid-2000s looking very much like commonly-known consumer products that flood the market a decade-and-a-half later:

First Amended Complaint for Patent Infringement and Demand for Jury Trial

1

2

3

4

5

6

7

  

8    42.    In 2012, Koss introduced Wi-Fi enabled headphones, the result of its Striva project,

9    which BizTimes hailed as the first wireless headphones to use Wi-Fi transmission and credited

10   Koss with "introducing personal listening to the Internet."  (https://biztimes.com/koss-creates-

11   wireless-headphones-for-wi-fi-music-access/).

12   43.    In April 2012, Koss brought to market both an in-ear and over-ear embodiment of

13   the Striva vision, with the Striva Pro model being the first true Wi-Fi over the ear headphones (and

14   mirroring many features and aesthetics modern-day users expect in wireless, over-ear headphones):

15

16

17

18



19

20

21

22

23

24

25   44.    The Striva Tap, a smaller, in-ear version of the Striva Pro Wi-Fi headphone,

26   provided users with some of the features that modern-day consumers take for granted in in-ear

27   headphones, like independent wireless earphones with touch gestures to control listening

28   preferences by manipulating the surface of the headphones:

First Amended Complaint for Patent Infringement and Demand for Jury Trial



45.     Koss also developed (though ultimately did not market) a smart speaker that incorporated many of the Striva features, albeit in a non-wearable form factor. The Striva-based speaker product had a capacitive touch interface to mimic the features of the Striva headphones, and also included a microphone for voice control. In addition, the Striva-based speaker had the capability to be included in a distributed network as part of a precursor to the presently-understood Internet of Things, such that the input devices (e.g., the microphone) could be used to control other items in the distributed network (e.g., light switches). The speaker therefore allowed, for example, a user to say "Striva, turn on the lights," and the lights would turn on.

46.     The Striva-based speaker product, referred to as the LS2, exists as a working prototype:



47.     Unfortunately, the economic reality of Koss's market position did not permit it to bring its Striva-based product vision to the masses.  In particular, due to events abroad (and Koss's reliance on sales into those foreign countries), Koss's supply chain and customer base were thrown into upheaval in the late-2000's and early-2010's.

48.     Moreover, Koss conducted market research during the mid-2000's, and concluded that given the market that was likely to develop for wireless headphones, larger companies with more manufacturing capability would become a substantial threat to bringing Striva fully to market. As a result, Koss invested substantially on part-purchasing, machinery, fabrication, and the like.

49.     The circumstances above, and other circumstances outside of Koss's control, meant that the advanced features first developed for Striva were not able to be fully experienced by the majority of the purchasing public.

50.     Koss brings the instant lawsuit because the industry has caught up to Koss's early-2000s vision:  the technology Koss developed as part of its substantial Striva investment has become standardized, with whole listening ecosystems having been built around the techniques Koss conceived of over a decade ago.

51.     More fundamentally, Koss is responsible for creating an entire headphone industry beginning from its release of the pioneering Stereophone as a ubiquitous way to consume information in 1958 has led to an entire headphone industry.  Plantronics and others are reaping enormous benefits due to John C. Koss's vision, and Koss Corporation's commitment to that vision, for more than six decades.

## THE PATENTS-IN-SUIT

52.     On February 12, 2019, U.S. Patent No. 10,206,025, entitled "System with Wireless Earphones," was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '025 Patent is attached hereto as Exhibit A.

53.     On July 30, 2019, U.S. Patent No. 10,368,155, entitled "System with Wireless Earphones," was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '155 Patent is attached hereto as Exhibit B.

54.     On November 5, 2019, U.S. Patent No. 10,469,934, entitled "System with Wireless Earphones," was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '934 Patent is attached hereto as Exhibit C.

55.     On December 10, 2019, U.S. Patent No. 10,506,325, entitled "System with Wireless Earphones," was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '325 Patent is attached hereto as Exhibit D.

56.     On August 25, 2020, U.S. Patent No. 10,757,498, entitled "System with Wireless Earphones," was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '498 Patent is attached hereto as Exhibit J.

57.     On November 24, 2020, U.S. Patent No. 10,848,852, entitled "System with Wireless Earphones," was duly and legally issued by the United States Patent and Trademark Office.  A true and accurate copy of the '852 Patent is attached hereto as Exhibit K.

58.     The Patents-in-Suit represent Koss's significant investment into the wireless headphone and wearable technology space, including its commitment in the form of decades of research and millions of dollars.

## DEFENDANTS' KNOWLEDGE OF THE PATENTS-IN-SUIT

59.     On July 10, 2020, Defendants were notified of their infringement of the '025 Patent, the '155 Patent, the '934 Patent, and the '325 Patent by way of the letter attached hereto as Exhibit I.

60.     On September 30, 2021, Defendants were notified of their infringement of the '498 Patent and the 852 Patent by way of the letter attached hereto as Exhibit L.

## FIRST CAUSE OF ACTION

### (Infringement of the '025 Patent)

61.     Koss incorporates by reference and realleges each and every allegation of Paragraphs 1 through 60 as if set forth herein.

62.     Koss owns all substantial rights, interest, and title in and to the '025 Patent, including the sole and exclusive right to prosecute this action and enforce the '025 Patent against infringers, and to collect damages for all relevant times.

63.     The '025 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '025 Patent also describes and claims how these wireless earphones use the claimed microphone to pick up utterances of a user and how, upon activation of a user-control of the headphone assembly, a request is initiated to a remote server.  Various additional functional and hardware limitations are described and claimed in the dependent claims of the '025 Patent.

64.     The written description of the '025 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65.     Plantronics has made, had made, used, imported, supplied, distributed, sold, and/or offered for sale products and/or systems, including systems in which its Backbeat-branded products and/or systems, including, but not limited to, the Backbeat Pro 5100 Headphones, are incorporated ("Accused '025 Headphones").

66.     As set forth in the attached non-limiting Claim chart (Exhibit E), Plantronics has infringed and is infringing at least Claim 1 of the '025 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the Accused '025 Headphones. In particular, the use of the Accused '025 Headphones by Plantronics to, for example, demonstrate those products in brick-and-mortar stores in the San Francisco Bay Area, California or to, for example, test those products, constitute acts of direct infringement of Claim 1 of the '025 Patent.

67.     Plantronics actively induces infringement of at least Claim 1 of the '025 Patent by selling the Accused '025 Headphones with instructions as to how to use the Accused '025 Headphones in a system such as that recited in the '025 Patent.  Plantronics aids, instructs, or otherwise acts with the intent to cause an end user to use the Accused '025 Headphones in an infringing manner.  Plantronics knew of the '025 Patent and knew that its use and sale of the Accused '025 Headphones infringe at least Claim 1 of the '025 Patent.  When a customer of

Plantronics uses the Accused '025 Headphones as specifically instructed by Plantronics, the customer uses the headphones in a manner that completes the system of Claim 1, thereby infringing Claim 1 of the '025 Patent.

68.     Plantronics is also liable for contributory infringement of at least Claim 1 of the '025 Patent by providing, and by having knowingly provided, a material part of the instrumentalities, namely the Accused '025 Headphones, used to infringe Claim 1 of the '025 Patent. The Accused '025 Headphones have no substantial non-infringing uses.  When an end user uses the Accused '025 Headphones in combination with, for example, a smart phone such as, for example, an Apple iPhone and/or a peripheral device such as, for example, an Apple Watch, the end user directly infringes Claim 1 of the '025 Patent.  Plantronics knew that the Accused '025 Headphones were especially made for use in an infringing manner prior to the filing of this lawsuit.  For at least the reasons set forth above, Plantronics contributes to the infringement of the '025 Patent by others.

69.     Koss has been damaged as a result of the infringing conduct by Plantronics alleged above.  Thus, Plantronics is liable to Koss in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

70.     Plantronics's infringement of the '025 Patent has caused, and will continue to cause, Koss to suffer substantial and irreparable harm.

71.     Plantronics has been aware that it infringes the '025 Patent since at least July 10, 2020, upon the receipt of the letter attached as Exhibit I.  Since obtaining knowledge of its infringing activities, Plantronics has failed to cease its infringing activities.  Further, Plantronics has continued its infringing activities, disregarding Koss's patent rights, since the filing of the original complaint on July 22, 2020.

72.     Plantronics's infringement of the '025 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Koss's rights under the patent.

73.     Koss has complied with 35 U.S.C. § 287 with respect to the '025 Patent.

1

## SECOND CAUSE OF ACTION

2

### (Infringement of the '155 Patent)

3        74.     Koss incorporates by reference and realleges each and every allegation of

4    Paragraphs 1 through 73 as if set forth herein.

5        75.     Koss owns all substantial rights, interest, and title in and to the '155 Patent,

6    including the sole and exclusive right to prosecute this action and enforce the '155 Patent against

7    infringers, and to collect damages for all relevant times.

8        76.     The '155 Patent generally describes wireless earphones that comprise a transceiver

9    circuit for receiving streaming audio from a data source, such as a digital audio player or a

10   computer, over a wireless network.  The '155 Patent also describes and claims a headphone

11   assembly with an antenna and rechargeable battery, that assembly configured to transition

12   automatically from playing digital audio content received wirelessly by the headphone assembly

13   via a first wireless network to playing digital audio content received wirelessly by the headphone

14   assembly via a second wireless network.  Various additional functional and hardware limitations

15   are described and claimed in the dependent claims of the '155 Patent.

16       77.     The written description of the '155 Patent describes in technical detail each of the

17   limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how

18   the non-conventional and non-generic combination of claim limitations is patentably distinct from

19   and improved upon what may have been considered conventional or generic in the art at the time

20   of the invention.

21       78.     Plantronics has made, had made, used, imported, supplied, distributed, sold, and/or

22   offered for sale products and/or systems, including systems in which its Backbeat-branded products

23   and/or systems, including, but not limited to, the BackBeat Pro 5100 Headphones, are incorporated

24   ("Accused '155 Headphones").

25       79.     As set forth in the attached non-limiting Claim chart (Exhibit F), Plantronics has

26   infringed and is infringing at least Claim 1 of the '155 Patent by making, having made, using,

27   importing, supplying, distributing, selling, and/or offering for sale the Accused '155 Headphones.

28   In particular, the use of the Accused '155 Headphones by Plantronics to, for example, demonstrate

those products in brick-and-mortar stores in San Francisco Bay Area, California or to, for example, test those products, constitute acts of direct infringement of Claim 1 of the '155 Patent.

80.     Plantronics actively induces infringement of at least Claim 1 of the '155 Patent by selling the Accused '155 Headphones with instructions as to how to use the Accused '155 Headphones in a system such as that recited in the '155 Patent.  Plantronics aids, instructs, or otherwise acts with the intent to cause an end user to use the Accused '155 Headphones in an infringing manner.  Plantronics knew of the '155 Patent and knew that its use and sale of the Accused '155 Headphones infringe at least Claim 1 of the '155 Patent.  When a customer of Plantronics uses the Accused '155 Headphones as specifically instructed by Plantronics, the customer uses the headphones in a manner that infringes at least Claim 1 of the '155 Patent.

81.     Plantronics is also liable for contributory infringement of at least Claim 1 of the '155 Patent by providing, and by having knowingly provided, a material part of the instrumentalities, namely the Accused '155 Headphones, used to infringe Claim 1 of the '155 Patent. The Accused '155 Headphones have no substantial non-infringing uses.  When an end user uses the Accused '155 Headphones in combination with, for example, a smart phone such as, for example, an Apple iPhone and/or a peripheral device such as, for example, an Apple Watch, the end user directly infringes Claim 1 of the '155 Patent.  Plantronics knew that the Accused '155 Headphones were especially made for use in an infringing manner prior to the filing of this lawsuit.  For at least the reasons set forth above, Plantronics contributes to the infringement of the '155 Patent by others.

82.     Koss has been damaged as a result of the infringing conduct by Plantronics alleged above.  Thus, Plantronics is liable to Koss in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

83.     Plantronics's infringement of the '155 Patent has caused, and will continue to cause, Koss to suffer substantial and irreparable harm.

84.     Plantronics has been aware that it infringes the '155 Patent since at least July 10, 2020, upon the receipt of the letter attached as Exhibit I.  Since obtaining knowledge of its infringing activities, Plantronics has failed to cease its infringing activities.  Further, Plantronics

1    has continued its infringing activities, disregarding Koss's patent rights, since the filing of the

2    original complaint on July 22, 2020.

3        85.    Plantronics's infringement of the '155 Patent is, has been, and continues to be,

4    willful, intentional, deliberate, and/or in conscious disregard of Koss's rights under the patent.

5        86.    Koss has complied with 35 U.S.C. § 287 with respect to the '155 Patent.

6                              **THIRD CAUSE OF ACTION**

7                              **(Infringement of the '934 Patent)**

8        87.    Koss incorporates by reference and realleges each and every allegation of

9    Paragraphs 1 through 86 as if set forth herein.

10       88.    Koss owns all substantial rights, interest, and title in and to the '934 Patent,

11   including the sole and exclusive right to prosecute this action and enforce the '934 Patent against

12   infringers, and to collect damages for all relevant times.

13       89.    The '934 Patent generally describes wireless earphones that comprise a transceiver

14   circuit for receiving streaming audio from a data source, such as a digital audio player or a

15   computer, over a wireless network.  The '934 Patent also describes and claims how these wireless

16   earphones use the claimed microphone to pick up utterances of a user and how, upon activation of

17   a user-control of the headphone assembly, a request is initiated to a remote server.  It further

18   describes and claims the receipt and storage of firmware upgrades.  Various additional functional

19   and hardware limitations are described and claimed in the dependent claims of the '934 Patent.

20       90.    The written description of the '934 Patent describes in technical detail each of the

21   limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how

22   the non-conventional and non-generic combination of claim limitations is patentably distinct from

23   and improved upon what may have been considered conventional or generic in the art at the time

24   of the invention.

25       91.    Plantronics has made, had made, used, imported, supplied, distributed, sold, and/or

26   offered for sale products and/or systems, including systems in which its Backbeat-branded products

27   and/or systems, including, but not limited to, the BackBeat Pro 5100 Headphones are incorporated

28   ("Accused '934 Headphones").

92.     As set forth in the attached non-limiting Claim chart (Exhibit G), Plantronics has infringed and is infringing at least Claim 1 of the '934 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the Accused '934 Headphones. In particular, the use of the Accused '934 Headphones by Plantronics to, for example, demonstrate those products in brick-and-mortar stores in San Francisco Bay Area, California or to, for example, test those products, constitute acts of direct infringement of Claim 1 of the '934 Patent.

93.     Plantronics actively induces infringement of at least Claim 1 of the '934 Patent by selling the Accused '934 Headphones with instructions as to how to use the Accused '934 Headphones in a system such as that recited in the '934 Patent.  Plantronics aids, instructs, or otherwise acts with the intent to cause an end user to use the Accused '934 Headphones in an infringing manner.  Plantronics knew of the '934 Patent and knew that its use and sale of the Accused '934 Headphones infringe at least Claim 1 of the '934 Patent.  When a customer of Plantronics uses the Accused '934 Headphones as specifically instructed by Plantronics, the customer uses the headphones in a manner that infringes at least Claim 1 of the '934 Patent.

94.     Plantronics is also liable for contributory infringement of at least Claim 1 of the '934 Patent by providing, and by having knowingly provided, a material part of the instrumentalities, namely the Accused '934 Headphones, used to infringe Claim 1 of the '934 Patent. The Accused '934 Headphones have no substantial non-infringing uses. When an end user uses the Accused '934 Headphones in combination with, for example, a smart phone such as, for example, an Apple iPhone and/or a peripheral device such as, for example, an Apple Watch, the end user directly infringes Claim 1 of the '934 Patent.  Plantronics knew that the Accused '934 Headphones were especially made for use in an infringing manner prior to the filing of this lawsuit.  For at least the reasons set forth above, Plantronics contributes to the infringement of the '934 Patent by others.

95.     Koss has been damaged as a result of the infringing conduct by Plantronics alleged above.  Thus, Plantronics is liable to Koss in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

96.     Plantronics's infringement of the '934 Patent has caused, and will continue to cause, Koss to suffer substantial and irreparable harm.

97.     Plantronics has been aware that it infringes the '934 Patent since at least July 10, 2020, upon the receipt of the letter attached as Exhibit I.  Since obtaining knowledge of its infringing activities, Plantronics has failed to cease its infringing activities.  Further, Plantronics has continued its infringing activities, disregarding Koss's patent rights, since the filing of the original complaint on July 22, 2020.

98.     Plantronics's infringement of the '934 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Koss's rights under the patent.

99.     Koss has complied with 35 U.S.C. § 287 with respect to the '934 Patent.

**FOURTH CAUSE OF ACTION**

**(Infringement of the '325 Patent)**

100.    Koss incorporates by reference and realleges each and every allegation of Paragraphs 1 through 99 as if set forth herein.

101.    Koss owns all substantial rights, interest, and title in and to the '325 Patent, including the sole and exclusive right to prosecute this action and enforce the '325 Patent against infringers, and to collect damages for all relevant times.

102.    The '325 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '325 Patent also describes and claims how these wireless earphones use the claimed microphone to pick up utterances of a user and specific limitations as to the curved hanger bar with a portion that rests upon the user's ear.  It further describes and claims a docking station for charging the earphones.  Various additional functional and hardware limitations are described and claimed in the dependent claims of the '325 Patent.

103.    The written description of the '325 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

104.   Plantronics has made, had made, used, imported, supplied, distributed, sold, and/or offered for sale products and/or systems, including systems in which certain BackBeat branded products and/or systems, including, but not limited to, the BackBeat Fit 3200 Headphones, are incorporated ("Accused '325 Headphones").

105.   As set forth in the attached non-limiting Claim chart (Exhibit H), Plantronics has infringed and is infringing at least Claim 1 of the '325 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the Accused '325 Headphones. In particular, the use of the Accused '325 Headphones by Plantronics to, for example, demonstrate those products in brick-and-mortar stores in San Francisco Bay Area, California or to, for example, test those products, constitute acts of direct infringement of Claim 1 of the '325 Patent.

106.   Plantronics actively induces infringement of at least Claim 1 of the '325 Patent by selling the Accused '325 Headphones with instructions as to how to use the Accused '325 Headphones in a system such as that recited in the '325 Patent.  Plantronics aids, instructs, or otherwise acts with the intent to cause an end user to use the Accused '325 Headphones in an infringing manner.  Plantronics knew of the '325 Patent and knew that its use and sale of the Accused '325 Headphones infringe at least Claim 1 of the '325 Patent.  When a customer of Plantronics uses the Accused '325 Headphones as specifically instructed by Plantronics, the customer uses the headphones in a manner that infringes at least Claim 1 of the '325 Patent.

107.   Plantronics is also liable for contributory infringement of at least Claim 1 of the '325 Patent by providing, and by having knowingly provided, a material part of the instrumentalities, namely the Accused '325 Headphones, used to infringe Claim 1 of the '325 Patent. The Accused '325 Headphones, have no substantial non-infringing uses. When an end user uses the Accused '325 Headphones in combination with, for example, a smart phone such as, for example, an Apple iPhone and/or an Apple Watch, the end user directly infringes Claim 1 of the '325 Patent. Plantronics knew that the Accused '325 Headphones were especially made for use in an infringing

manner prior to the filing of this lawsuit.  For at least the reasons set forth above, Plantronics contributes to the infringement of the '325 Patent by others.

108.    Koss has been damaged as a result of the infringing conduct by Plantronics alleged above.  Thus, Plantronics is liable to Koss in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

109.    Plantronics's infringement of the '325 Patent has caused, and will continue to cause, Koss to suffer substantial and irreparable harm.

110.    Plantronics has been aware that it infringes the '325 Patent since at least July 10, 2020, upon the receipt of the letter attached as Exhibit I.  Since obtaining knowledge of its infringing activities, Plantronics has failed to cease its infringing activities.  Further, Plantronics has continued its infringing activities, disregarding Koss's patent rights, since the filing of the original complaint on July 22, 2020.

111.    Plantronics's infringement of the '325 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Koss's rights under the patent.

112.    Koss has complied with 35 U.S.C. § 287 with respect to the '325 Patent.

## **FIFTH CAUSE OF ACTION**

### **(Infringement of the '498 Patent)**

113.    Koss incorporates by reference and realleges each and every allegation of Paragraphs 1 through 112 as if set forth herein.

114.    Koss owns all substantial rights, interest, and title in and to the '498 Patent, including the sole and exclusive right to prosecute this action and enforce the '498 Patent against infringers, and to collect damages for all relevant times.

115.    The '498 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '498 Patent describes and claims a system-on-chip that mutes audio content streamed to the headphone in response to detecting an incoming wireless

First Amended Complaint for Patent Infringement and Demand for Jury Trial

communication to the headphone, a specific improvement to the art.  Various additional functional and hardware limitations are described and claimed in the dependent claims of the '498 Patent.

116.    The written description of the '498 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

117.    Plantronics has made, had made, used, imported, supplied, distributed, sold, and/or offered for sale products and/or systems, including systems in which its Backbeat-branded products and/or systems, including, but not limited to, the BackBeat FIT 300 Headphones, as well as certain Voyager branded headphones are incorporated ("Accused '498 Headphones").  On information and belief, the BackBeat Fit 300 headphones were offered for sale and actually sold by Plantronics as of August 26, 2020.

118.    As set forth in the attached non-limiting Claim chart (Exhibit M), Plantronics has infringed and is infringing at least Claim 1 of the '498 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the Accused '498 Headphones. In particular, the use of the Accused '498 Headphones by Plantronics to, for example, demonstrate those products in brick-and-mortar stores in San Francisco Bay Area, California or to, for example, test those products, constitute acts of direct infringement of Claim 1 of the '498 Patent.

119.    Plantronics actively induces infringement of at least Claim 1 of the '498 Patent by selling the Accused '498 Headphones with instructions as to how to use the Accused '498 Headphones in a system such as that recited in the '498 Patent.  Plantronics aids, instructs, or otherwise acts with the intent to cause an end user to use the Accused '498 Headphones in an infringing manner.  Plantronics knew of the '498 Patent and knew that its use and sale of the Accused '498 Headphones infringe at least Claim 1 of the '498 Patent.  When a customer of Plantronics uses the Accused '498 Headphones as specifically instructed by Plantronics, the customer uses the headphones in a manner that infringes at least Claim 1 of the '498 Patent.

120.     Plantronics is also liable for contributory infringement of at least Claim 1 of the '498 Patent by providing, and by having knowingly provided, a material part of the instrumentalities, namely the Accused '498 Headphones, used to infringe Claim 1 of the '498 Patent. The Accused '498 Headphones have no substantial non-infringing uses. When an end user uses the Accused '498 Headphones in combination with, for example, a smart phone such as, for example, an Apple iPhone and/or a peripheral device such as, for example, an Apple Watch, the end user directly infringes Claim 1 of the '498 Patent.  Plantronics knew that the Accused '498 Headphones were especially made for use in an infringing manner prior to the filing of this lawsuit.  For at least the reasons set forth above, Plantronics contributes to the infringement of the '498 Patent by others.

121.     Koss has been damaged as a result of the infringing conduct by Plantronics alleged above.  Thus, Plantronics is liable to Koss in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

122.     Plantronics's infringement of the '498 Patent has caused, and will continue to cause, Koss to suffer substantial and irreparable harm.

123.     Plantronics has been aware that it infringes the '498 Patent since at least September 30, 2021, upon the receipt of the letter attached as Exhibit L.  Since obtaining knowledge of its infringing activities, Plantronics has failed to cease its infringing activities.

124.     Plantronics's infringement of the '498 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Koss's rights under the patent.

125.     Koss has complied with 35 U.S.C. § 287 with respect to the '498 Patent.

## **SIXTH CAUSE OF ACTION**

### **(Infringement of the '852 Patent)**

126.     Koss incorporates by reference and realleges each and every allegation of Paragraphs 1 through 125 as if set forth herein.

127.     Koss owns all substantial rights, interest, and title in and to the '852 Patent, including the sole and exclusive right to prosecute this action and enforce the '852 Patent against infringers, and to collect damages for all relevant times.

128.     The '852 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '852 Patent describes and claims a system that includes a mobile computing device with a graphical user interface thereon to allow the user to select an audio control setting for the wireless headphones.  Various additional functional and hardware limitations are described and claimed in the dependent claims of the '852 Patent.

129.     The written description of the '852 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

130.     Plantronics has made, had made, used, imported, supplied, distributed, sold, and/or offered for sale products and/or systems, including systems in which its Backbeat-branded products and/or systems, including, but not limited to, the BackBeat FIT 3100 Headphones, as well as other BackBeat Fit, BackBeat Go, and BackBeat Pro headphones are incorporated ("Accused '852 Headphones").  On information and belief, the BackBeat Fit 3100 headphones were offered for sale and actually sold by Plantronics for use with its Backbeat Mobile Application as of November 25, 2020.  On information and belief, the BackBeat mobile application is still supported by Plantronics and the mobile application is still available for its customers to download as of October 1, 2021.

131.     As set forth in the attached non-limiting Claim chart (Exhibit N), Plantronics has infringed and is infringing at least Claim 1 of the '852 Patent by making, having made, using, importing, supplying, distributing, selling, and/or offering for sale the Accused '852 Headphones along with its BackBeat branded mobile application.  In particular, the use of the Accused '852 Headphones by Plantronics to, for example, demonstrate those products in brick-and-mortar stores in San Francisco Bay Area, California or to, for example, test those products, constitute acts of direct infringement of Claim 1 of the '852 Patent.

132.     Plantronics actively induces infringement of at least Claim 1 of the '852 Patent by selling the Accused '852 Headphones with instructions as to how to use the Accused '852

Headphones in a system such as that recited in the '852 Patent.  Plantronics aids, instructs, or otherwise acts with the intent to cause an end user to use the Accused '852 Headphones along with the BackBeat mobile application in an infringing manner.  Plantronics knew of the '852 Patent and knew that its use and sale of the Accused '852 Headphones infringe at least Claim 1 of the '852 Patent.  When a customer of Plantronics uses the Accused '852 Headphones as specifically instructed by Plantronics, the customer uses the headphones in a manner that completes the system of Claim 1, thereby infringing Claim 1 of the '852 Patent.

133.    Plantronics is also liable for contributory infringement of at least Claim 1 of the '852 Patent by providing, and by having knowingly provided, a material part of the instrumentalities, namely the Accused '852 Headphones along with the BackBeat mobile application, used to infringe Claim 1 of the '852 Patent. The Accused '852 Headphones have no substantial non-infringing uses. When an end user uses the Accused '852 Headphones in combination with, for example, a smart phone such as, for example, an Apple iPhone and/or a peripheral device such as, for example, an Apple Watch, the end user directly infringes Claim 1 of the '852 Patent.  Plantronics knew that the Accused '852 Headphones were especially made for use in an infringing manner prior to the filing of this lawsuit.  For at least the reasons set forth above, Plantronics contributes to the infringement of the '852 Patent by others.

134.    Koss has been damaged as a result of the infringing conduct by Plantronics alleged above.  Thus, Plantronics is liable to Koss in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

135.    Plantronics's infringement of the '852 Patent has caused, and will continue to cause, Koss to suffer substantial and irreparable harm.

136.    Plantronics has been aware that it infringes the '852 Patent since at least September 30, 2021, upon the receipt of the letter attached as Exhibit L.  Since obtaining knowledge of its infringing activities, Plantronics has failed to cease its infringing activities.

137.    Plantronics's infringement of the '852 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Koss's rights under the patent.

1    138.    Koss has complied with 35 U.S.C. § 287 with respect to the '852 Patent.

2                                        **JURY DEMAND**

3    Koss hereby requests a trial by jury on all issues so triable by right.

4                                       **PRAYER FOR RELIEF**

5    WHEREFORE, Koss requests that:

6        A.     The Court find that Plantronics has directly infringed the Patents-in-Suit and hold

7    Plantronics liable for such infringement;

8        B.     The Court find that Plantronics has indirectly infringed the Patents-in-Suit by

9    inducing its customers to directly infringe the Patents-in-Suit and hold Plantronics liable for such

10   infringement;

11       C.     The Court find that Plantronics has indirectly infringed the Patents-in-Suit by

12   contributing to Plantronics's customers' direct infringement of the Patents-in-Suit and hold

13   Plantronics liable for such infringement;

14       D.     The Court award damages pursuant to 35 U.S.C. § 284 adequate to compensate Koss

15   for Plantronics's past infringement of the Patents-in-Suit, including both pre- and post-judgment

16   interest and costs as fixed by the Court;

17       E.     The Court increase the damages to be awarded to Koss by three times the amount

18   found by the jury or assessed by the Court;

19       F.     The Court declare that this is an exceptional case entitling Koss to its reasonable

20   attorneys' fees under 35 U.S.C. § 285; and

21       G.     The Court award such other relief as the Court may deem just and proper.

22

23

24

25

26

27

28

First Amended Complaint for Patent Infringement and Demand for Jury Trial

1   Dated: October 1, 2021                        Respectfully submitted,

2                                                 By: */s/ Peter E. Soskin*
                                                  _____
3                                                 Peter E. Soskin
                                                  Erik J. Halverson (SBN 333492)
4                                                 **K&L Gates LLP**
                                                  Four Embarcadero Center, Suite 1200
5                                                 San Francisco, CA 94111
                                                  peter.soskin@klgates.com
6                                                 Erik.Halverson@klgates.com
                                                  Tel: (415) 882-8200
7                                                 Fax: (415) 882-8220

8                                                 Benjamin E. Weed (pro hac vice)
                                                  Gina A. Johnson (pro hac vice)
9                                                 Melissa M. Haulcomb  (pro hac vice)
                                                  Amanda C. Maxfield  (pro hac vice)
10                                                **K&L GATES LLP**
                                                  70 W. Madison
11                                                Suite 3300
                                                  Chicago, IL 60602
12                                                Benjamin.Weed@klgates.com
                                                  Gina.Johnson@klgates.com
13                                                Melissa.Haulcomb@klgates.com
                                                  Amanda.Maxfield@klgates.com
14                                                Telephone: (312) 372-1121
                                                  Facsimile: (312) 827-8000

15                                                **Attorneys for Plaintiff Koss Corporation**

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint for Patent Infringement and Demand for Jury Trial