Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
Erik J. Halverson (SBN 333492)
Erik.Halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: 415 882 8200

Benjamin E. Weed (IL SBN 6294052)
benjamin.weed@klgates.com
Philip A. Kunz (IL SBN 6297002)
philip.kunz@klgates.com
Gina A. Johnson (IL SBN 6320853)
gina.johnson@klgates.com
James A. Shimota (IL SBN 6270603)
james.shimota@klgates.com
Amanda C. Maxfield (IL SBN 6336337)
amanda.maxfield@klgates.com
**K&L GATES LLP**
70 W. Madison Street, Suite 3100
Chicago, IL 60602
Tel: 312.372.1121

Darlene F. Ghavimi (TX SBN 24072114)
darlene.ghavimi@klgates.com
**K&L GATES LLP**
2801 Via Fortuna, Suite #350
Austin, TX 78746
Tel.: (512) 482-6919

*Attorneys for Plaintiff Koss Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOSS CORPORATION,<br><br>            Plaintiff,<br><br>     v.<br><br>PLANTRONICS INC., et al.,<br><br>            Defendants. | Case No. 21-cv-03854-JST<br><br>**KOSS'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**<br><br>**Honorable Judge Jon S. Tigar** |

1

## TABLE OF CONTENTS

2    I.    Introduction ....................................................................................................... 1

3    II.    Legal Standard .................................................................................................. 3

4    III.    The Patents-in-Suit Are Patent Eligible ........................................................ 4

5       A.    Alice Step One—The Claims of the Patents-in-Suit are Not Directed to an

6             Abstract Idea ................................................................................................. 5

7          1.    Claim 1 of the '325 Patent is Not Directed to an Abstract Idea ................. 7

8          2.    Claim 1 of the '025 Patent is Not Directed to an Abstract Idea ................. 8

9          3.    Claim 1 of the '155 Patent is Not Directed to an Abstract Idea ............... 10

10         4.    Claim 1 of the '934 Patent is Not Directed to an Abstract Idea ............... 11

11         5.    Claim 1 of the '498 Patent is Not Directed to an Abstract Idea ............... 12

12         6.    Claim 1 of the '852 Patent is Not Directed to an Abstract Idea ............... 13

13         7.    Defendants' Failure as it Relates to Any Dependent Claim ...................... 14

14      B.    Patent Eligible Subject Matter in Cases with Comparable Claims.............. 15

15      C.    Alice Step Two—The Claims of the Patents-in-Suit Amount to Significantly

16             More Than a Patent on an Ineligible Concept. .......................................... 16

17      D.    Defendants Fail to Consider the Claims in their Totality Rendering the Cited

18             Authority Inapposite .................................................................................... 19

19    IV.    Conclusion ...................................................................................................... 22

20

21

22

23

24

25

26

27

28

KOSS'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                                21-CV-03854-JST

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016)........................................................................ 20, 21

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ................................. 1, 2, 3, 4, 5, 6, 7, 14, 16, 17, 18, 20, 21

*Align Tech., Inc v. 3Shape A/S*,
No. 17-1647-LPS, 2020 WL 5979353 (D. Del. Oct. 8, 2020) ............................... 18

*Ancora Techs., Inc. v. HTC Am., Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)........................................................................ 2, 16

*Ashcroft v. Iqbal*,
556 U.S. 662, 664 (2009) ....................................................................................... 4

*Avago Techs. Gen. IP (Singapore) PTE Ltd v. Asustek Comput. Inc.*,
No. 15-cv-04525-EMC, 2016 WL 1623920 (N.D. Cal. Apr. 25, 2016) ................ 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ....................................................................................... 4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)............................................................. 2, 3, 17, 18

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)............................................................................. 5

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)........................................................... 2, 4, 17, 18

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019)...................................................................... 19, 20

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)............................................................................. 20

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 3:17-cv-04738-WHO, 2021 WL 4148651 (N.D. Cal. Sept. 13, 2021) ........... 19

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)............................................................................ 2, 4

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)...................................................... 2, 7, 14, 16

- ii -

*Fortinet, Inc. v. Forescout Techs., Inc.*,
   No. 20-cv-03343-EMC, 2020 WL 6415321 (N.D. Cal. Nov. 2, 2020) .............................. 5, 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1989) .............................................................................................. 4

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
   967 F.3d 1319 (Fed. Cir. 2020) ............................................................................................ 4

*Innovative Global Sys., LLC v. Keep Truckin, Inc.*,
   No. 19-641 (MN), 2020 WL 1443201 (D. Del. Mar. 24, 2020) ........................................... 16

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ............................................................................................ 6

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) .............................................................................................. 4

*M2M Sols. LLC v. Sierra Wireless America, Inc.*,
   No. 14-1102-RGA, 2020 WL 7767639 (D. Del. Dec. 4, 2020) ........................................... 16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) .............................................................................................................. 5

*McRO, Inc. v. Bandai Namco Games America Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ....................................................................................... 2, 6

*Microsoft Corp. v. I4I Ltd. P'ship*,
   564 U.S. 91 (2011) .............................................................................................................. 4

*Olympus Corp. v. Maxell, Ltd.*,
   2018 WL 5962471, * 6 (D. Del. Nov. 14, 2018) ............................................................ 15, 16

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
   827 F.3d 1042 (2016) ......................................................................................................... 7

*RICPI Communications LLC v. JPS Interoperability Sols., Inc.*,
   No. 18-1507-RGA, 2019 WL 1244077 (D. Del. Mar. 18, 2019) ......................................... 16

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*
   No. 2020-2320, 2021 WL 2944838 (Fed. Cir. Jul. 14, 2021) ........................................ 21, 22

*Thales Visionix Inc. v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017) ..................................................................................... 2, 16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ..................................................................................... 3, 17

*Xoran Techs., LLC v. Planmeca USA, Inc.*,
   No. 17 CV 7131, 2018 WL 2320944 (N.D. Ill. May 22, 2018) ...................................... 15, 16

- iii -

*XY, LLC v. Trans Ova Genetics, LC,*
   No. 2019-1789, 2020 WL 4378028 (Fed. Cir. July 31, 2020)................................................... 2

**Statutes**

35 U.S.C. § 101 ........................................................................................................... 4, 5, 16, 19

Federal Rule of Civil Procedure 8(a)(2)............................................................................... 3

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1, 4, 22

KOSS'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                                    21-CV-03854-JST

1    Plaintiff Koss Corporation ("Koss" or "Plaintiff") opposes the Rule 12(b)(6) Motion to

2    Dismiss ("Motion") filed by Defendants Plantronics, Inc. and Polycom, Inc. (collectively

3    "Defendants'"). ECF No. 80.

4    **I.   <u>INTRODUCTION</u>**

5    Koss filed this case on July 22, 2020, alleging that Defendants' willful, direct, indirect, and

6    contributory infringement of U.S. Patent Nos. 10,206,025 ("the '025 Patent"), 10,368,155 ("the

7    '155 Patent"), 10,469,934 ("the '934 Patent"), and 10,506,325 ("the '325 Patent") and later,

8    amended its Complaint to add U.S. Patent Nos. 10,757,498 ("the '498 patent") and 10,848,852

9    ("the '852 patent") (collectively the "Patents-in-Suit") warranted injunctive and monetary relief.

10   ECF No. 1 (Complaint) and ECF No. 71 (First Amended Complaint, ("FAC")).  The Patents-in-

11   Suit in this case are related, share a specification, and claim priority to the same provisional patent

12   application.  All of the Patents-in-Suit were prosecuted with the benefit of the Supreme Court's

13   guidance in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014); indeed, all six Patents-in-Suit have

14   filing dates in 2018, 2019, and 2020 and corresponding, later issue dates.  When these patents

15   issued, the *Alice*-based framework for assessing patent eligibility was well-understood, both in the

16   Courts and at the United States Patent and Trademark Office ("USPTO").  Unlike the patents in all

17   but one of Defendants' cited cases, the Patents-in-Suit are 10,###,### series patents, issued with

18   the benefit of large swaths of Court and USPTO-issued guidance on patent subject matter

19   eligibility.  The USPTO was aware of this guidance and properly issued the Patents-in-Suit.

20   Defendants' Motion makes no mention of any intervening change in the law since the patents'

21   prosecution or issuance that would warrant granting Defendants' requested relief of invalidating

22   Koss's intellectual property rights, and Defendants' Motion certainly does not warrant ignoring the

23   *presumption of validity* the Patents-in-Suit enjoy as issued United States patents.

24   Fundamentally, Koss' Patents-in-Suit are generally directed to wireless headphones with

25   many physical and structural claim elements.  These specific hardware components result in

26   claimed hardware devices and systems that offer significant improvements over the then-existing

27   devices.  The Patents-in-Suit are quintessential patentable subject matter under both steps of the

28   two-step test set forth by the Supreme Court in *Alice*, 573 U.S.  The claimed apparatuses in the '155

- 1 -

1   Patent, the '934 Patent, the '325 Patent, and the '498 Patent as well as the systems in the '025 Patent
2   and the '852 Patent, are all explicitly directed to physical, tangible headphone assemblies and
3   systems that include a mobile computer device with a graphical display screen—devices that are
4   facially and plainly not abstract. This Court need not proceed further than *Alice* Step One in
5   dismissing Defendants' Motion.

6       In an effort to prematurely dispose of this case, Defendants' arguments would have the
7   Court ignore the core patent-eligible aspects of the inventions; to make this request, Defendants
8   have erroneously and disingenuously represented to this Court that the Patents-in-Suit are directed
9   to generic "wireless communication over a network." ECF No. 80 (Motion) at 1. In an effort to
10  avoid a true analysis under *Alice* step one, Defendants simply allege that because the Patents-in-
11  Suit *relate*, in part, to wireless communication, the claims as a whole are not patent-eligible.
12  However, this is a gross mischaracterization of the claims and importantly, numerous binding
13  decisions from the Supreme Court and Federal Circuit—decisions uncited and undistinguished in
14  Defendants' brief—flatly reject this notion. *See, e.g., Enfish, LLC v. Microsoft Corp.*, 822 F.3d
15  1327 (Fed. Cir. 2016); *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018); *Ancora Techs., Inc.*
16  *v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018); *McRO, Inc. v. Bandai Namco Games America*
17  *Inc.*, 837 F.3d 1299 (Fed. Cir. 2016); *Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed.
18  Cir. 2017); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019); *XY, LLC v. Trans Ova*
19  *Genetics, LC*, No. 2019-1789, 2020 WL 4378028 (Fed. Cir. July 31, 2020); *Data Engine Techs.*
20  *LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018).

21      In failing to acknowledge these key decisions, Defendants ignore the relevant inquiry under
22  *Alice* Step One: whether the claims, **as a whole**, are directed to an abstract idea (i.e., a method of
23  wireless communication over a network as Defendants allege) versus eligible subject matter. This
24  Court's analysis can end there. *See, e.g., XY*, 2020 WL 4378028, at *6 ("Having concluded that
25  the asserted claims [] are not directed to an abstract idea at *Alice* step one, we need not reach *Alice*
26  step two.") (citing *Data Engine*, 906 F.3d at 1007).

27      Even still, under *Alice* Step Two, the claims of the Patents-in-Suit contain elements arranged
28  in combination that amount to significantly more than a patent on the "ineligible concept itself."

- 2 -

1   *Alice*, 573 U.S. at 217–18.   Defendants' Motion misrepresents the patented inventions and the

2   improvements contained within the Patents-in-Suit.   Moreover, Defendants repeatedly allege that

3   the Patents-in-Suit claim "generic components" and that were "known" in the prior art.   ECF No.

4   80 (Motion) at 2–3, 5–22, 25.   *See e.g., id*. at 21–22 ("The patent makes no claim that Koss invented

5   Bluetooth, nor does it suggest that its use, at that level of generality, were unknown in the art as of

6   the priority date of the '852 patent.") (internal citations omitted).   However, the Motion is silent

7   with regard to any reason why the Court should conclude, in the face of settled law, that the claimed

8   inventions of the Patents-in-Suit are conventional.   *See Berkheimer*, 881 F.3d at 1368 ("The

9   question of whether a claim element or combination of elements is well-understood, routine and

10  conventional to a skilled artisan in the relevant field is a question of fact"), *see, e.g.*, ECF No. 71

11  (FAC) at ¶64 ("The written description of the '025 Patent describes . . . how the non-conventional

12  and non-generic combination of claim limitations is patentably distinct from and improved upon

13  what may have been considered conventional or generic in the art at the time of the invention.");

14  *see also* ECF No. 71 (FAC) at ¶115 ("The '498 Patent describes and claims a system-on-chip that

15  mutes audio content streamed to the headphone in response to detecting an incoming wireless

16  communication to the headphone, a specific improvement to the art.").

17      This matter is well-settled, and Defendants' thinly veiled obviousness arguments should be

18  seen for what they are:   irrelevant to the question of patent eligibility.   *Two-Way Media Ltd. v.*

19  *Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339–40 (Fed. Cir. 2017) ("as the court correctly

20  concluded that the material was relevant to a novelty and obviousness analysis, and not whether

21  the claims were directed to eligible subject matter").

22      Defendants should not be permitted to add a new argument on this unaddressed factual

23  prong of the second step of *Alice*.   Thus, under both steps, denial of Defendants' Motion is

24  appropriate.

25  **II.      LEGAL STANDARD**

26      Federal Rule of Civil Procedure 8(a)(2) requires the complaint include "a short and plain

27  statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   To

28  overcome a motion to dismiss, a "plaintiff's factual allegations in the complaint must suggest that

- 3 -

1  the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th

2  Cir. 2014); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007);  *Ashcroft v. Iqbal*,

3  556 U.S. 662, 664 (2009).  In resolving a 12(b)(6) motion, "the allegations of the non-moving party

4  must be accepted as true, while the allegations of the moving party which have been denied are

5  assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550

6  (9th Cir. 1989).

7      Issued patents are presumed valid and the burden of establishing invalidity of a claim rests

8  on the party asserting invalidity by clear and convincing evidence.  *Microsoft Corp.  v.  I4I Ltd.*

9  *P'ship*, 564 U.S. 91, 95 (2011).  Patent eligibility can be determined on the pleadings when there

10  are no factual allegations that, when taken as true, prevent resolving the eligibility question as a

11  matter of law.  *Data Engine*, 906 F.3d at 1007; *see also Cellspin*, 927 F.3d 1306  (vacating Rule

12  12(b)(6) dismissals where the complaint made plausible and "well-pleaded allegations" of

13  eligibility).

14  **III.    THE PATENTS-IN-SUIT ARE PATENT ELIGIBLE**

15      An invention is patent eligible if it claims "any new and useful process, machine,

16  manufacture, or composition of matter, or any new and useful improvement thereof." *Alice*, 573

17  U.S. at 216.  It is undisputable that 35 U.S.C. § 101 "contains an important implicit exception:

18  Laws of nature, natural phenomena, and abstract ideas are not patentable." *Id.* (quoting *Ass'n for*

19  *Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).  To distinguish claims

20  to patent-eligible applications of laws of nature, natural phenomena, or abstract ideas from claims

21  that impermissibly tie-up or preempt such laws and ideas, courts apply the two-part test set forth in

22  *Alice*.  573 U.S. at 217.  First, a court examines whether the claims are "directed to" an abstract

23  idea.  *Id.*  "If—and only if—they are, then we proceed to the second inquiry, where we examine

24  whether the limitations of the claim apart from the [abstract idea], considered individually and as

25  an ordered combination, 'transform the nature of the claim' into a patent-eligible application."

26  *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 967 F.3d 1319, 1325 (Fed. Cir. 2020) (citing *Alice*, 573

27  U.S. at 217).

28

- 4 -

MOTION TO DISMISS                                              21-CV-03854-JST

1    In the event that step one results in a finding that the claims that are not directed towards a

2  law of nature, natural phenomena, or an abstract idea, the analysis stops as the claims are directed

3  towards patent-eligible subject matter.  This is the case here.

4    Even if the Court is persuaded that the claims of the Patents-in-Suit are directed towards the

5  abstract idea as Defendants claim, the analysis of the content of the claims as a whole confirms that

6  the claims transform Defendants alleged "abstract idea" into patent-eligible claims.  As such, the

7  claims of the Patents-in-Suit satisfy both steps of the *Alice* inquiry.

8    A.    **Alice Step One—The Claims of the Patents-in-Suit are Not Directed to an**

9           **Abstract Idea**

10   Defendants erroneously argue that the claims of the Patents-in-Suit are "broadly directed to

11  . . . wireless communication over a network" and therefore are directed to a patent ineligible abstract

12  idea.  ECF No. 80 (Motion) at 1.  This is exactly what the Supreme Court expressly forbids.  *Mayo*

13  *Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) (Oversimplifying the claims

14  should be avoided because "all inventions at some level embody, use, or abstract ideas.").  To the

15  contrary, the claims of the Patents-in-Suit are directed to a tangible device (*e.g.*, headphone

16  assemblies and systems), which include various hardware components to, among other things,

17  communicate and play sound to the user wearing the headphones.  The claimed arrangement results

18  in functionally superior headphones compared to headphone assemblies in the prior art.  *See BSG*

19  *Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an application of an

20  abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea

21  itself.").  The fact that the claims are directed to tangible headphone assemblies for playing audio

22  information, and not to generic computer hardware, should end this Court's inquiry.

23   A court may assess claims in view of the policy rationale for 35 U.S.C. § 101, i.e.,

24  preemption.  *Fortinet, Inc. v. Forescout Techs., Inc.*, No. 20-cv-03343-EMC, 2020 WL 6415321,

25  *4 (N.D. Cal. Nov. 2, 2020).  In upholding eligibility, courts have "justified their decisions by

26  pointing to the lack of a preemption risk."  *Id.*  The claims of the Patents-in-Suit certainly do not

27  preempt the entire concept of "communicating information wirelessly."  For example, claim 1 of

28  the '325 Patent requires a curved hanger bar with a portion that rests upon an upper external

- 5 -

curvature of an ear.  ECF No. 71-4 ('325 Patent) at cl. 1; *see also* ECF No. 71-1 ('025 Patent) at cl. 1 ("wherein the processor is for, upon activation of a user-control of the headphone assembly, initiating transmission of a request to the remote, network-connected server."); ECF No. 71-2 ('155 Patent) at cl. 1 ("a rechargeable battery for powering the wireless headphone assembly"); ECF No. 71-3 ('934 Patent) at cl. 1 ("wherein the headphone assembly is for receiving firmware upgrades transmitted from the remote, network-connected server"); ECF No. 71-10 ('498 Patent) at cl. 1 ("wherein the first [system-on-chip] comprises: a [] wireless communication circuit[,] . . . processor circuit[,] . . . wireless communication circuit[,] and a [] memory unit"); ECF No. 71-11 ('852 Patent) at cl. 1 ("wherein the mobile computer device comprises a screen that is configured to display a graphical user interface through which a user of the wireless headphones selects an audio control setting for the wireless headphone").  It is undisputable that there are various devices capable of communicating information wirelessly that fall outside the scope of the claims of the Patents-in-Suit.  Defendants' characterization of the patent claims in this way should be seen for the farce it is, and the preemption analysis highlights the true nature of the patent claims (and the falsity of Defendants' arguments regarding the same).

To do as Defendants suggest—reduce the claims of the Patents-in-Suit to the abstract idea of "communicating information wirelessly"—oversimplifies the claims and ignores the express recitation of specific limitations or tangible elements in those claims (filed by Koss, a headphone company) that specifically require headphones.  *See also McRo*, 837 F.3d at 1313 ("We have previously cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.").

Defendants, by ignoring the vast majority of the claim limitations, have effectively asked this Court to conduct speculative eligibility analysis against hypothetical, broadened claims, without any legal basis for doing so.  This over-simplification reduces the claims to an unfair representation as to the focus of the claim as a whole, running afoul of how step one of *Alice* must be analyzed.  *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (At *Alice* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.").  Courts have been clear, there is a

- 6 -

1    distinction between claims that are ***directed*** to excluded subject matter and claims that ***involve***

2    excluded subject matter. *Enfish*, 822 F.3d at 1335; *see also Rapid Litig. Mgmt. Ltd. v. CellzDirect,*

3    *Inc.*, 827 F.3d 1042, 1050 (2016).

4        The Supreme Court has not established a definitive rule to determine what constitutes an

5    "abstract idea" sufficient to satisfy *Alice* step one; one way is to compare claims at issue to those

6    claims already found to be directed to an abstract idea in previous cases. *Enfish*, 822 F.3d at 1334.

7    However, the cases Defendants cite are distinguishable as the claims in those cases are far more

8    generic and lack the specific elements and hardware present here.  Although the cases cited by the

9    Defendants generally include claims that disclose some sort of wireless communication, none

10   involve claims that require specific apparatuses or systems that comprising distinct, physical

11   components that together result in an improved apparatus or system.  Thus, although the claims of

12   the Patents-in-Suit ***involve*** forms of "wireless communication" they are not ***directed*** to "wireless

13   communication."

14       Quite to the contrary of the cases Defendants cite, the claims of the Patents-in-Suit are each

15   to specific headphone hardware.

16           1.    Claim 1 of the '325 Patent is Not Directed to an Abstract Idea

17   Claim 1 of the '325 Patent recites:

18   1. **Headphones** comprising:

19   a pair of **first** and **second** wireless **earphones** to be worn simultaneously by a user,
     wherein the first and second earphones are separate such that when the
     headphones are worn by the user, **the first and second earphones are not
20   physically connected**, wherein each of the first and second earphones
     comprises:

21   **a body portion**;

22   **an earbud** extending from the body portion that is inserted into an ear of the
23   user when worn by the user;

     **a curved hanger bar** connected to the body portion, wherein the curved hanger
24   bar comprises a portion that rests upon an upper external curvature of an ear
     of the user behind an upper portion of an auricula of the ear of the user;

25   **a wireless communication circuit** for receiving and transmitting wireless
26   signals;

     **a processor circuit** connected to the wireless communication circuit;
27
     at least one **acoustic transducer** for producing audible sound from the earbud;
28
     **a microphone** for picking up utterances of a user of the headphones;

- 7 -

**an antenna** connected to the wireless communication circuit; and

**a rechargeable power source**; and

**a docking station** for holding at least the first wireless earphone, wherein the docking station comprises a power cable for connecting to an external device to power the docking station, and wherein the docking station is for charging at least the first wireless earphone when the first wireless earphone is placed in the docking station.

ECF No. 71-4 ('325 Patent) at cl. 1 (emphasis added). Claim 1 of the '325 Patent is directed towards a specific apparatus, two headphones that are not physically connected, the headphones comprising a body, a bud, a curved hanger bar, a microphone, and an antenna, among other discrete hardware components that, collectively, provide for an improved headphone.

The claim language itself compels a conclusion of patent eligibility on its face because the '325 Patent claims an apparatus (i.e., headphones; a pair of first and second wireless earphones) with specific structural limitations (i.e., an earbud extending from the body portion of the earphone that is inserted into an ear of the user and a curved hanger bar portion that rests upon an upper external curvature of an ear of the user), as well as requires additional hardware components such as an antenna, acoustic transducer, processor, rechargeable battery, microphone, docking station, and a wireless communication circuit. For example, the specification of the '325 Patent states that the hanger bar "allows the earphone to clip to, or hang on, the user's ear" and this allows a user "to position the earphone on the listener's ear." *Id.* at 4:4–17. Further, any headphone without a curved hanger bar, as well as any headphone connected via wire, would not be preempted by this claim. When claim 1 of the '325 Patent is viewed in its entirety, as it must be per controlling precedent, it plainly covers a specific, non-abstract apparatus with specific limitations, not Defendants' abstract idea of "wireless communication over a network."

2.    Claim 1 of the '025 Patent is Not Directed to an Abstract Idea

Claim 1 of the '025 Patent recites:

1. A system comprising:

a mobile, **digital audio player** that stores digital audio content; and

a **headphone assembly**, separate from and in wireless communication with the mobile digital audio player, wherein the headphone assembly comprises:

**first** and **second earphones**, wherein each of the first and second earphones comprises an **acoustic transducer**;

- 8 -

an **antenna** for receiving wireless signals from the mobile, digital audio player via one or more ad hoc wireless communication links;

a **wireless communication circuit** connected to the at least one antenna, wherein the at least one wireless communication circuit is for receiving and transmitting wireless signals to and from the headphone assembly;

a **processor**;

a **rechargeable battery** for powering the headphone assembly; and

a **microphone** for picking up utterances by a user of the headphone assembly; and

a remote, network-connected **server** that is in wireless communication with the mobile, digital audio player;

wherein the mobile, digital audio player is for transmitting digital audio content to the headphone assembly via the one or more ad hoc wireless communication links, such that **the digital audio content received by the headphone assembly from the mobile, digital audio player is playable by the first and second earphones**; and

wherein the processor is for, upon activation of a **usercontrol of the headphone assembly**, initiating **transmission of a request** to the remote, network-connected server.

ECF No. 71-1 ('025 Patent) at cl. 1 (emphasis added). Claim 1 of the '025 Patent is directed towards a specific system, a digital audio player and a headphone assembly that are not physically connected. The headphones of the assembly comprise two distinct earphones, a processor, and a microphone, among other discrete hardware components that, collectively, provide for an improved headphone assembly.

The claim language itself compels a conclusion of patent eligibility on its face because the '025 Patent claims a specific system, comprising a device (i.e., a mobile, digital audio player that stores digital audio content) and an apparatus (i.e., a headphone assembly; first and second earphones), as well as requires additional hardware components, such as an antenna, acoustic transducer, processor, a remote, network-connected server, rechargeable battery, a microphone, and a user-control component. For example, the specification of the '025 Patent states "the earphone may comprise a user control, such as button . . . that, when activated, causes the earphone to transmit an electronic request . . . to the host server" that is in wireless communication with the mobile, digital audio player. *Id.* at 14:51–57, *see also* 11:62-12:4 (describing transmission of ratings). Further, any headphone without a microphone would clearly not be preempted by this claim. When

- 9 -

claim 1 of the '025 Patent is viewed in its entirety and considered as a whole, and not using the over-simplification Defendants employ, it is clear the claims are directed towards an apparatus with specific limitations, not the Defendants' abstract idea of "wireless communication over a network."

### 3. Claim 1 of the '155 Patent is Not Directed to an Abstract Idea

Claim 1 of the '155 Patent recites:

1. A wireless **headphone assembly** comprising:

**first** and **second earphones**, wherein each of the first and second earphones comprises an **acoustic transducer**;

an **antenna** for receiving wireless signals;

a **wireless communication circuit** connected to the antenna, wherein the wireless communication circuit is for receiving and transmitting wireless signals to and from the wireless headphone assembly;

a **processor** in communication with the wireless communication circuit; and

a **rechargeable battery** for powering the wireless headphone assembly,

wherein the headphone assembly is configured, with the processor, to **transition automatically from playing digital audio** content received wirelessly by the headphone assembly via a **first** wireless **network to** playing digital audio content received wirelessly by the headphone assembly via a **second** wireless **network**.

ECF No. 71-2 ('155 Patent) at cl. 1 (emphasis added). Claim 1 of the '155 Patent is directed towards a specific apparatus, a headphone assembly (i.e., two earphones), the earphones comprising, an antenna, wireless communication circuit, and a rechargeable battery, among other discrete hardware components that, collectively, provide for an improved headphone assembly.

The claim language itself compels a conclusion of patent eligibility on its face because the '155 Patent claims an apparatus (i.e., a wireless headphone assembly comprising first and second earphones) and requires additional hardware components such as an acoustic transducer, an antenna connected to a wireless communication circuit, rechargeable battery, and a wireless communication circuit, and a specific processor that can automatically transition from playing digital audio content between two wireless networks. *Id.* at 2:3–6, Fig. 6. For example, when the earphone and the data source are "out of range" (i.e., "when the received signals degrade below the threshold minimum signal strength level"), both the earphone and the data source "may transition automatically to communicate over an infrastructure wireless network (such as a wireless LAN 15 (WLAN)) [] that

- 10 -

1   is in the range of both the earphone [] and the data source." *Id.* at 5:9–16, Fig. 2B.  Further, any

2   headphone that is not capable from transitioning to receive content via a first network to content

3   received via a second network would not be preempted by this claim.  When claim 1 of the '155

4   Patent is viewed in its entirety and considered as a whole, and not using the over-simplification

5   Defendants employ, it is clear the claims are directed towards an apparatus with specific limitations,

6   not the Defendants' abstract idea of "wireless communication over a network."

7               4.      Claim 1 of the '934 Patent is Not Directed to an Abstract Idea

8       Claim 1 of the '934 Patent states:

9       1. A **headphone assembly** comprising:

        **first** and **second earphones**, wherein each of the first and second earphones
10          comprises an **acoustic transducer**; and

11      an **antenna** for receiving wireless signals from a mobile, digital audio player via
            one or more ad hoc wireless communication links;

12      a **wireless communication circuit** connected to the antenna, wherein the wireless
            communication circuit is for receiving and transmitting wireless signals to and
13          from the headphone assembly;

14      a **processor**;

15      a **memory** for storing firmware that is executed by the processor;

        a **rechargeable battery** for powering the headphone assembly; and
16
        a **microphone** for picking up utterances by a user of the headphone assembly; and

17      wherein the headphone assembly is configured to **play**, by the first and second
            earphones, **digital audio** content transmitted by the mobile, digital audio player
18          via the one or more ad hoc wireless communication links;

19      wherein the processor is configured to, upon activation of a **user-control of the
            headphone assembly**, **initiate** transmission of **a request** to a remote, network-
20          connected server that is in wireless communication with the mobile, digital
            audio player; and

21      wherein the headphone assembly is for **receiving firmware upgrades** transmitted
            from the remote, network-connected server.
22

23  ECF No. 71-3 ('934 Patent) at cl. 1 (emphasis added).  Claim 1 of the '934 Patent is directed towards

24  a specific apparatus, a headphone assembly, (i.e., two earphones), the earphones comprising, an

25  antenna, wireless communication circuit, a rechargeable battery, and memory, among other discrete

26  hardware components that, collectively, provide for an improved headphone assembly.

27      The claim language itself compels a conclusion of patent eligibility on its face because the

28  '934 Patent claims a specific apparatus (i.e., a headphone assembly comprising first and second

                                        - 11 -

earphones), and requires additional hardware components such as an acoustic transducer, an antenna connected to a wireless communication circuit, processor, and memory for storing received firmware upgrades.  For example, the specification states the "memory units . . . may store firmware that is executed by the processor unit [and e]xecution of the firmware by the processor unit [] may provide various functionality for the earphone."  *Id.* at 7:43–546.  The specification describes numerous benefits to the user as a result of the execution of the firmware.  *See Id.* at 9:14–28, 10:4–35, 10:49–54, 14:2–62, 15:24–34, 15:50–61.  When claim 1 of the '934 Patent is construed in its entirety and considered as a whole, it is clear that it is not broadly directed to "wireless communication over a network," and utilizing generic components as Defendants have alleged.

### 5.    Claim 1 of the '498 Patent is Not Directed to an Abstract Idea

Claim 1 of the '498 Patent states:

1. **Headphone** comprising:

a pair of **first** and **second wireless earphones** to be worn simultaneously by a user, wherein each of the first and second wireless earphones comprises at least one **acoustic transducer** for producing audible sound;

wherein the first wireless earphone comprises a **first system-on-chip (SOC)**, wherein the first SOC comprises:

   a first **wireless communication circuit** for receiving and transmitting wireless signals;

   a first **processor circuit** connected to the first wireless communication circuit; and

   a first **memory unit** in communication with the first processor circuit for **storing firmware updates pushed** to the headphones **from a remote network server**;

wherein the first wireless communication circuit is for receiving audio content streamed wirelessly to the headphones from a first audio content source, such that the first and second wireless earphones play the audio content streamed wirelessly to the headphones; and

wherein the first processor circuit is configured to, in response to detecting an incoming wireless communication to the headphones;

mute the audio content streamed wirelessly to the headphones being played by the headphones; and

output audio of the incoming wireless communication circuit via the first and second wireless earphones.

ECF No. 71–10 ('498 Patent) at cl. 1 (emphasis added).  Claim 1 of the '498 Patent is directed towards a specific apparatuses, headphones (i.e., two earphones) comprising a specific piece of

KOSS'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

21-CV-03854-JST

1  hardware, a system-on-chip (SOC) that includes a wireless communication circuit, a processor

2  circuit, and a memory unit.

3      The claim language alone compels a conclusion of patent eligibility on its face because the

4  '498 Patent claims a specific apparatus (i.e., a pair of first and second wireless earphones) and

5  requires additional hardware components such as an acoustic transducer, a first system-on-chip

6  (SOC) comprising, a wireless communication circuit, a processor circuit, and a memory unit n

7  communication with the first processor circuit for storing firmware updates pushed to the

8  headphones from a remote network server.  *Id.* at 6:30–55, Fig. 3.  The specific limitations of

9  discrete hardware components required by claim 1, collectively provide for an improved apparatus

10  (i.e., headphones).  For example, "the transceiver circuit 100 may be implemented as a single

11  integrated circuit (IC), such as a system-on-chip (SOC), which is conducive to miniaturizing the

12  components of the earphone 10, which is advantageous if the earphone 10 is to be relatively small

13  in size, such as an in-ear earphone." *Id.* at 6:45–50.  When claim 1 of the '498 Patent is viewed in

14  its entirety and considered as a whole, and not using the over-simplification Defendants employ, it

15  is clear the claims are directed towards an apparatus with specific limitations, not the Defendants'

16  abstract idea of "wireless communication over a network."

17          6.    Claim 1 of the '852 Patent is Not Directed to an Abstract Idea

18  Claim 1 of the '852 Patent states:

19  1. A **system** comprising:

20  **wireless headphones** comprising **first** and **second earphones**; and

   a **mobile computer device** that is in wireless communication with, and **untethered
21      to**, the wireless headphones, wherein the mobile computer device is for
       wirelessly pairing with the wireless headphones such that the wireless
22      headphones play audio content transmitted wirelessly to the wireless
       headphones from the mobile computer device, wherein the mobile computer
23      device is for wirelessly pairing with the wireless headphones via an ad hoc
       wireless communication link between the mobile computer device and the
24      wireless headphones, and wherein the ad hoc wireless communication link
       comprises a Bluetooth wireless communication link; and
25
   wherein the mobile computer device comprises **a screen** that is configured to
26      display **a graphical user interface** through which a user of the wireless
       headphones selects an **audio control setting for the wireless headphones** to
27      be applied to the wireless headphones when the wireless headphones play the

28

- 13 -

1    audio content, and wherein the wireless headphones receive the audio control
2    setting via a wireless **data communication link**.

3    ECF No. 71-11 ('852 Patent) at cl. 1 (emphasis added).  Claim 1 of the '852 Patent is directed

4    towards a specific system comprising a wireless headphone assembly (i.e., two earphones), and a

5    mobile computing device having a graphical user interface that provides for audio control selection

6    and application, among other discrete components that, collectively, provide for an improved

7    headphone assembly.

8          The claim language itself compels a conclusion of patent eligibility on its face because the

9    '852 Patent claims a system comprising a wireless headphone assembly (i.e., first and second

10   earphones) and a mobile computing device with a graphical user interface thereon to allow the user

11   to select an audio control setting for the wireless headphones.  *Id.* at cl. 1, 2:17–21.  This system,

12   in particular the hardware of the mobile device, transforms this claim substantially from the alleged

13   idea of wireless communication.  The '852 Patent describes the solutions associated with providing

14   such an interface for selecting of certain audio control settings.  *Id.* at 13:40-52.  This audio control

15   setting selection and application to the headphones of the system allow for a more tunable user

16   experience not present in the prior art.  When claim 1 of the '852 Patent is viewed in its entirety

17   and considered as a whole, and not using the over-simplification Defendants employ, it is clear the

18   claims are directed towards a system, comprising headphones and a mobile computing device, not

19   the Defendants' abstract idea of "wireless communication over a network."

20         It is clear that when the claims of the Patents-in-Suit are individually considered, in their

21   entirety, their character as a whole is *not directed* to excluded subject matter, under step one.  Not

22   only do Defendants oversimplify the claims at issue, but they do the same with the *Alice* step one

23   inquiry.  Step one asks whether the claims are "***directed*** to excluded subject matter," not whether

24   the claims "***involve*** a patent-ineligible concept." *Enfish*, 822 F.3d at 1335 (emphasis added).

25              7.    Defendants' Failure as it Relates to Any Dependent Claim

26         Defendants' Motion pays nothing more than passing lip service to the dependent claims of

27   the Patents-in-Suit, all of which further limit the scope of the independent claims and add additional

28   details.  Defendant simply concludes the dependent claims "recite only trivial details" without any

- 14 -

1    support for such an argument.  ECF No. 80 (Motion) at 20, 22.  Defendants' decision to characterize

2    these additional limitations as "generic" does not make them so, and only underscores the

3    impropriety of their argument.  *Id.* at 12, 14, 16, 18, 24.  These additional claims add specific audio

4    control settings (ECF No. 71-11 at cls. 2-5), additional hardware and circuitry (ECF No. 71-2 at

5    cls. 3, 12–14), power supply specifications, (ECF No. 71-10 at cls. 5, 8, 17, 18), as well as specific

6    limitations as to the type of earphones ( ECF No. 71-1 at cls. 29, 39, 40, 53, 54, 55, 56; *see also*

7    *e.g.,* ECF No. 71-3 at cls. 23, 33, 42, 48, 49, 50, 51).  Defendants' Motion does not address any of

8    these additional elements, but each is another reason the claims are directed to patent eligible

9    subject matter.

10   **B.      Patent Eligible Subject Matter in Cases with Comparable Claims**

11   The claims of the Patents-in-Suit are similar to the claims in *Xoran Techs., LLC v. Planmeca*

12   *USA, Inc.*, No. 17 CV 7131, 2018 WL 2320944 (N.D. Ill. May 22, 2018).  *Xoran* considered claims

13   directed to a scanner capable of taking x-ray images, a computer that generates 3D images, and a

14   display.  *Id.* at *5.  The court concluded that "the claims at issue are directed to more than just the

15   idea of taking and displaying images, as claim 1 describes a scanner with **specific improvements**"

16   and "**specific structural limitations**."  *Id.* *5–6 (emphasis added).  Finding the claims were not

17   directed to an abstract idea the court, did not reach step two.  *Id.*; s*ee also Avago Techs. Gen. IP*

18   *(Singapore) PTE Ltd v. Asustek Comput. Inc.*, No. 15-cv-04525-EMC, 2016 WL 1623920, *5 (N.D.

19   Cal. Apr. 25, 2016) ("[T]he Federal Circuit has noted that an abstraction is 'an idea, having no

20   particular concrete or tangible form.'") (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709,

21   715 (Fed. Cir. 2014)).  This "abstraction" of *Avago* is far from the claims at hand where there is

22   very much a specific, concrete, tangible form in which the claimed invention manifests itself.

23   In *Olympus Corp. v. Maxell, Ltd.*, the court considered claims directed to "'a recording/play-

24   back apparatus' that uses a controller to monitor and control different modes of operation and power

25   consumption of the apparatus."  No. 18-216 (MN), 2018 WL 5962471, * 6 (D. Del. Nov. 14, 2018).

26   The Court also noted that the patent "describes battery-consumption **problems with prior devices**

27   and how the claimed controller **improves** those devices."  *Id.* (emphasis added).  Ultimately the

28   court held "the focus of claim 1 is an **improved** camera, **not a generic improvement** in battery (or

- 15 -

resource) conservation untethered from any technology [and] . . . is not directed to an ineligible abstract idea" and did not consider step two.  *Id.*  Similar to *Olympus* and *Xoran*, the Patents-in-Suit claim **improved** headphones and a headphone system, **not a generic improvement** in "wireless communication" as Defendants suggest, and there is no need for the court to reach step two.

Other courts have reached similar conclusions when considering claims disclosing apparatuses or devices with discrete physical components.  *See, e.g., Innovative Global Sys., LLC v. Keep Truckin, Inc.*, No. 19-641 (MN), 2020 WL 1443201, *6 (D. Del. Mar. 24, 2020) (finding patent eligible, claims directed to "an **onboard system that physically exists** and uses **tangible components** specifically adapted to continuously monitor certain data from the vehicle . . . and transmit that data to a **portable device**.") (emphasis added); *RICPI Communications LLC v. JPS Interoperability Sols., Inc.*, No. 18-1507-RGA, 2019 WL 1244077, *4 (D. Del. Mar. 18, 2019) (holding the claims eligible because "the computer network or internet connection serves as one claim element of a **concrete system** for two-way radio communication.") (emphasis added); *M2M Sols. LLC v. Sierra Wireless America, Inc.*, No. 14-1102-RGA, 2020 WL 7767639, *8 (D. Del. Dec. 4, 2020) (finding "the claims are directed to a **concrete** programmable communicator **device** having a processing module and an interface . . . [t]hese **tangible components** of the invention are **configured in a specific manner to improve the functioning of the device** . . .") (emphasis added).

Consistent with the cases above, the claims of the Patent-in-Suit are not directed to an abstract idea under *Alice* step one.  Because the *Alice* steps are sequential, if the court finds that "the claims are not directed to an abstract idea under step one," then it need not proceed to step two. *Enfish*, 822 F.3d at 1339 (citing *Alice*, 573 U.S. at 217 ); *see also Ancora Techs.*, 908 F.3d at 1349.  The first-stage filter (i.e., *Alice* step one) is a meaningful one and can end the § 101 inquiry. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346 (Fed. Cir. 2017).  This Court's analysis can, and should, stop with step one.

## C.    Alice Step Two—The Claims of the Patents-in-Suit Amount to Significantly More Than a Patent on an Ineligible Concept.

- 16 -

1    Under *Alice* step two, "the question of whether a claim element or combination of elements

2    is well-understood, routine and conventional to a skilled artisan in the relevant field is a ***question***

3    ***of fact***," a question that "must be proven by ***clear and convincing evidence***." *Berkheimer*, 881

4    F.3d at 1368 (emphasis added). Importantly, step two is not satisfied by simply determining

5    whether the components themselves are conventional or generic, for "an inventive concept can be

6    [] found in the non-conventional and non-generic ***arrangement*** of known, conventional pieces of

7    computing components." *Fortinet*, 2021 WL 2412995, *5 (citing *BASCOM Global Internet Servs.,*

8    *Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016)) (emphasis added). *See Cellspin*,

9    927 F.3d at 1319 ("claims that use an environment—a computer, a mobile phone, etc.—to do

10   significantly more than simply carry out an abstract idea are patent eligible . . . [i]n particular, they

11   recite a specific, plausibly inventive way of arranging devices and using protocols rather than the

12   general idea of capturing, transferring, and publishing data."). Moreover, contrary to what

13   Defendants' arguments seem to suggest, *Alice* step two is an entirely separate exercise from any

14   obviousness determination. *Two-Way Media*, 874 F.3d at 1339–40.

15       If the court considers the claims at issue under step two, the ultimate answer will be the

16   same: the claims of the Patents-in-Suit are directed to patent eligible subject matter. In analyzing

17   the character of the individual claims Koss has identified specific claim elements that are "non-

18   conventional and non-generic" and furthermore, has shown that the combination of those elements

19   is "non-conventional and non-generic." For example, the specification of the states the "memory

20   units . . . may store firmware that is executed by the processor unit [and e]xecution of the firmware

21   by the processor unit [] may provide various functionality for the earphone." ECF No. 71-3 ('934

22   Patent) at 7:43–546. Thus, this combination of elements (i.e., firmware, stored in the memory of

23   the headphone assembly's, and the execution of that firmware, by the headphone assembly's

24   processor) results in numerous, non-conventional and non-generic benefits. *See id.* at 9:14–28,

25   10:4–35, 10:49–54, 14:2–62, 15:24–34, 15:50–61. The remaining advantages set forth above in

26   Section III(a) further demonstrate how the claims of the Patents-in-Suit arrange specific

27   components, in a specific manner, to provide for an improved headphone assembly.

28

KOSS'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS                                              21-CV-03854-JST

1    Moreover, the court must "determine whether the facts alleged in the complaint, taken as

2   true, entitle the plaintiff to a legal remedy." *Cellspin*, 927 F.3d at 1314. Defendants allege "Koss

3   does not plead any factual allegations that the asserted patents recite any inventive concept," and

4   that Koss's FAC "states that the claimed invention represents a specific improvement to the art, yet

5   never explains what it is that the claims supposedly improve, let alone how or why." ECF No. 80

6   (Motion) at 3, 24 (internal quotes omitted). This is not the case. The FAC pleads and properly

7   identifies the improvements the claimed inventions provide. ECF No.71 (FAC) at ¶¶63–64, 76–77,

8   89–90, 102–102, 115–116, 128–129; *see also, e.g.,* ECF No. 71 (FAC) at ¶89 ("'934 Patent also

9   describes and claims how these wireless earphones use the claimed microphone to pick up

10  utterances of a user and how, upon activation of a user-control of the headphone assembly, a request

11  is initiated to a remote server . . [and] the receipt and storage of firmware upgrades."); ¶128 ("The

12  '852 Patent describes and claims a system that includes a mobile computing device with a graphical

13  user interface thereon to allow the user to select an audio control setting for the wireless

14  headphones."). Therefore, Koss's pleadings clearly allege the improvements of the claimed

15  headphone assemblies and systems and furthermore, these alleged improvements are grounded in

16  the specifications and file histories of the Patents-in-Suit.

17    Importantly, Defendants' Motion is entirely silent with regard to any reason why the Court

18  should find that the claimed invention of the Patents-in-Suit are conventional, thus they have

19  certainly not met their burden of clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368;

20  *see also Align Tech., Inc v. 3Shape A/S*, No. 17-1647-LPS, 2020 WL 5979353, *2 (D. Del. Oct. 8,

21  2020) (Denying 3Shape's motion is at *Alice* step one and determining that at step 2 "it is at least

22  plausible that there is something in the patented invention that might be unconventional, not well-

23  known, or not well-understood . . . [a]t this stage, Align is entitled to all plausible inferences. . . .

24  3Shape has failed to meet its burden at step 2.").

25    Without specifics or support, Defendants simply allege that the "non-abstract" claim

26  limitations of the Patents-in-Suit were "well-understood, routine, conventional activities previously

27  known to the industry." ECF No. 80 (Motion) at 5. *See Berkheimer*, 881 F.3d at 1368 (explaining

28  that concepts may only be found unpatentable as a matter of law when "there is no genuine issue

- 18 -

of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field"); *see also Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO, 2021 WL 4148651, *8 (N.D. Cal. Sept. 13, 2021) ("GoPro offers no basis to make a similar finding here [that the claim limitations were "well-understood, routine, and conventional"] and Contour's pleading forecloses it.").  What is "well-understood, routine, and conventional" to a skilled artisan in the relevant field is a question of fact and cannot be disposed of at this stage.  Furthermore, Defendants allege that Koss has "not plead any factual allegations that the asserted patents recite any inventive concept."  ECF No. 80 (Motion) at 3.  However, this is not the case.  Koss has sufficiently alleged facts within its Complaint, FAC, and corresponding attachments, that the claims of the Patents-in-Suit recite an "inventive concept" and the individual claim elements or combination of elements are not "well-understood, routine and conventional" to a skilled artisan in the relevant field.  *See also*, Sections III(A)(1)–(6). Defendants, the burden bearing party on this Motion, have submitted no evidence as to this determination, simply legal conclusions and conclusory attorney argument.  This is plainly insufficient to meet their clear and convincing burden necessary to establish the Patents-in-Suit unpatentable under 35 U.S.C. § 101.

**D.** **Defendants Fail to Consider the Claims in their Totality Rendering the Cited Authority Inapposite**

Defendants rely primarily on four Federal Circuit decisions, claiming they are dispositive of this matter.  ECF No. 80 (Motion) at 8.  Unsurprisingly given the Defendants' mischaracterization of the claimed technology, however, these cases are easily distinguished.  The cases Defendants have selected generally involve claims that disclose some sort of wireless communication, but fail to disclose specific apparatuses or systems that comprise distinct, physical components that together, recite a specific improvement over the prior art.

In *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, the Federal Circuit considered apparatus claims directed to "a movable barrier operator."  935 F.3d 1341, 1345 (Fed. Cir. 2019).  The court determined the claims were "directed to wirelessly communicating status information about a system . . . [i.e.,] the wireless status condition data transmitter transmits a status condition

- 19 -

signal that: corresponds to a present operational status condition defined, at least in part, by at least two operating states." *Id.* at 1346. The Federal Circuit noted that the "claims merely recite a system that communicates status information" and failed to recite "a specific improvement over prior systems" or an "improved user interface" which have been found to be patent eligible. *Id.* at 1348. As previously described, claims of the Patents-in-Suit ***do*** recite "a specific improvement over prior systems" and/or an "improved user interface," because they offer the user wireless headphones that are physically separate, in-ear type phones, with a rechargeable battery, that are much smaller than the wireless headphone proposed at the time. *See, e.g.*, ECF No. 71-3 ('934 Patent) at 1:48–62.

In *ChargePoint, Inc. v. SemaConnect, Inc.*, the Federal Circuit analyzed apparatus claims reciting a "control device to turn electric supply on and off to enable and disable charge transfer for electric vehicles." 920 F.3d 759, 766 (Fed. Cir. 2019). Under *Alice* step one, the court explained, the claim involves "the abstract idea of communicating requests to a remote server and receiving communications from that server." *Id.* Furthermore, "the specification failed to provide any technical details for the tangible components." *Id.* at 767. These findings in conjunction with the plain language of the claim, distinguish *ChargePoint* from the claims at issue in this case. The specifications of the Patents-in-Suit provide a wealth of technical details for the many tangible components disclosed in the claims at issue. *See, e.g.*, ECF No. 71-4 ('325 Patent) at 4:4–17 (the hanger bar "allows the earphone to clip to, or hang on, the user's ear" and this allows a user "to position the earphone on the listener's ear."); ECF No. 71-1 ('025 Patent) at 14:51–57 ("the earphone may comprise a user control, such as button, . . . that, when activated, causes the earphone to transmit an electronic request . . . to the host server" that is in wireless communication with the mobile, digital audio player.); *see also* Section III(a).

In *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, the Federal Circuit considered a system claim comprising "a network based media managing system that maintains a library of content . . . a collection of instructions . . . operable when executed [by a handheld device]. . . to send a request for a streaming delivery of the content." 838 F.3d 1266, 1267–68 (Fed. Cir. 2016). Unlike the headphone assemblies and systems of the Patent-in-Suit, the *Affinity Labs* system lacked a concrete device or system and there are no specific structural limitations. The *Affinity Labs* court explained

- 20 -

KOSS'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

21-CV-03854-JST

1   under *Alice* step one, "[a]t that level of generality, the claims do no more than describe a desired

2   function or outcome, without providing any limiting detail that confines the claim to a particular

3   solution to an identified problem.  The purely functional nature of the claim confirms that it is

4   directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* at 1269.  Furthermore,

5   under *Alice* step two, the court in *Affinity Labs* held the "features set forth in the claims are described

6   and claimed generically rather than with the specificity necessary to show how those components

7   provide a concrete solution to the problem addressed by the patent." *Id.* at 1271.  Conversely, the

8   claims of the Patent-in-Suit are directed towards a concrete and limited embodiment of wireless

9   communication:  the claimed headphone assemblies.

10  Lastly, Defendants cite to *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, as dispositive for

11  finding the claims of the Patents-in-Suit are directed to patent ineligible subject matter.  No. 2020-

12  2320, 2021 WL 2944838, *1 (Fed. Cir. Jul. 14, 2021).  But again, Defendants' argument misses

13  the mark.   In *Sensormatic*, the court considered "[a] surveillance system for wireless

14  communication between components comprising: a base system including at least two wireless

15  input capture devices (ICDs) . . . having at least one sensor and at least one input component for

16  detecting and recording inputs, a processor, a memory, a transmitter/receiver . . . in electronic

17  connection." *Id.*  The Federal Circuit highlighted important points that contributed to a finding of

18  ineligibility, including "Sensormatic fail[ed] to identify any particular nonabstract configuration"

19  of the ICDs, that the "concept of encoding or decoding image data is [itself] abstract," and that

20  "prioritization of ICD input data through detection of trigger events is an aspect of the abstract idea

21  of remote surveillance." *Id.* at *3.  Unlike *Sensormatic*, the claims of the Patents-in-Suit clearly

22  identify particular non-abstract physical configurations, and do not involve abstract concepts or

23  events that amount "wireless communication" as Defendants allege.  For example, when the

24  earphone and the data source (claimed in the '155 Patent) are "out of range" (i.e., "when the

25  received signals degrade below the threshold minimum signal strength level"), both the earphones

26  and the data source themselves, "may transition automatically to communicate over an

27  infrastructure wireless network (such as a wireless LAN 15 (WLAN)) [] that is in the range of both

28  the earphone [] and the data source," ECF No. 71-2 ('155 Patent) at 5:9–16, Fig. 2B.  This

- 21 -

1    functional enhancement offers important benefits to the user and amounts to an "inventive concept"

2    and a significant improvement over other headphone assemblies in the prior art.   As with the

3    preceding three cases, *Sensormatic* is not determinative of the claims of the Patents-in-Suit.

4    **IV.   CONCLUSION**

5        For the reasons discussed above, Koss respectfully request that this Court deny Defendant's

6    Rule 12(b)(6) Motion to Dismiss.

7

8

9    Dated:  November 15, 2021          */s/ Peter E. Soskin*
                                         Peter E. Soskin (SBN 280347)
10                                       Erik J. Halverson (SBN 333492)
                                         Benjamin E. Weed (admitted *pro hac vice*)
11                                       Philip A. Kunz (admitted *pro hac vice*)
                                         Darlene F. Ghavimi (admitted *pro hac vice*)
12                                       James A. Shimota (admitted *pro hac vice*)
                                         Gina E. Johnson (admitted *pro hac vice*)
13                                       Amanda C. Maxfield (admitted *pro hac vice*)

14                                       **ATTORNEYS FOR PLAINTIFF**
15                                       **KOSS CORPORATION**

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -