UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOSS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PLANTRONICS INC, et al.,<br><br>Defendants. | Case No. 21-cv-03854-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 80 |

Before the Court is Defendants Plantronics Inc. and Polycom Inc.'s (collectively, "Poly") motion to dismiss the first amended complaint. ECF No. 80. The Court will grant the motion.

## I.    BACKGROUND

Plaintiff Koss Corporation ("Koss") holds patents involving wireless earphones: U.S. Patent Nos. 10,206,025 ("the '025 Patent"), 10,368,155 ("the '155 Patent"), 10,469,934 ("the '934 Patent"), 10,506,325 ("the '325 Patent"), 10,757,498 ("the '498 Patent"), and 10,848,852 ("the '852 Patent"). The '025 Patent, '155 Patent, '934 Patent, and '325 Patent were issued in 2019, and the '498 Patent and '852 Patent were issued in 2020.

According to the first amended complaint, "[t]he '025 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network. The '025 Patent also describes and claims how these wireless earphones use the claimed microphone to pick up utterances of a user and how, upon activation of a user-control of the headphone assembly, a request is initiated to a remote server." ECF No. 71 ¶ 63.

"The '155 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer,

United States District Court
Northern District of California

over a wireless network.  The '155 Patent also describes and claims a headphone assembly with an antenna and rechargeable battery, that assembly configured to transition automatically from playing digital audio content received wirelessly by the headphone assembly via a first wireless network to playing digital audio content received wirelessly by the headphone assembly via a second wireless network."  *Id.* ¶ 76.

"The '934 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '934 Patent also describes and claims how these wireless earphones use the claimed microphone to pick up utterances of a user and how, upon activation of a user-control of the headphone assembly, a request is initiated to a remote server.  It further describes and claims the receipt and storage of firmware upgrades."  *Id.* ¶ 89.

"The '325 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '325 Patent also describes and claims how these wireless earphones use the claimed microphone to pick up utterances of a user and specific limitations as to the curved hanger bar with a portion that rests upon the user's ear.  It further describes and claims a docking station for charging the earphones."  *Id.* ¶ 102.

"The '498 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '498 Patent describes and claims a system-on-chip that mutes audio content streamed to the headphone in response to detecting an incoming wireless communication to the headphone, a specific improvement to the art."  *Id.* ¶ 115.

"The '852 Patent generally describes wireless earphones that comprise a transceiver circuit for receiving streaming audio from a data source, such as a digital audio player or a computer, over a wireless network.  The '852 Patent describes and claims a system that includes a mobile computing device with a graphical user interface thereon to allow the user to select an audio control setting for the wireless headphones."  *Id.* ¶ 128.

Koss alleges that Poly infringes on these patents by "importing, offering to sell, and selling

products that infringe the asserted patents." *Id.* ¶ 9. Poly now moves to dismiss Koss's first amended complaint with prejudice. Poly argues that the patents are invalid because "they are broadly directed to the abstract idea of wireless communication over a network and fail to recite any inventive concept," ECF No. 80 at 6, and are thus ineligible for patenting under 35 U.S.C. § 101.

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 556). While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Patent eligibility may be decided on a motion to dismiss "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). However, if there are claim construction disputes at the Rule 12(b)(6) stage, either the Court must adopt the non-moving party's constructions or resolve the disputes to whatever extent is needed to conduct the Section 101 analysis. *Aatrix*, 882 F.3d at 1125 (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016)). In this case, neither party raises claim

1    construction disputes that prevent the Court from determining the motion at this stage.

2        "Section 101 of the Patent Act defines the subject matter eligible for patent protection" by

3    providing that "any new and useful process, machine, manufacture, or composition of matter, or

4    any new and useful improvement thereof" may be patented.  *Alice Corp. Pty. Ltd. v. CLS Bank*

5    *Int'l*, 573 U.S. 208, 216 (2014); 35 U.S.C. §101.  By enumerating patent-eligible subject matter,

6    Section 1 "contains an important implicit exception: . . . . abstract ideas are not patentable."  *Alice*,

7    573 U.S. at 216 (internal quotation marks and citation omitted).  But "an invention is not rendered

8    ineligible for patent simply because it involves an abstract concept."  *Id.* at 217.  Courts must

9    distinguish between patents that claim abstract ideas, on the one hand, and patents "that claim

10   patent-eligible *applications* of those concepts," on the other hand.  *Id.*  (emphasis added).

11       To draw this distinction, courts engage in a two-step analysis under *Alice*.  At step one,

12   courts determine whether the claims at issue are "directed to" an abstract idea.  *Id.*  "*Alice* step one

13   presents a legal question" only, which "does not require an evaluation of the prior art or facts

14   outside of the intrinsic record."  *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374

15   (Fed. Cir. 2020).  The step-one analysis often begins "with an examination of eligible and

16   ineligible claims of a similar nature from past cases."  *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,

17   841 F.3d 1288, 1295 (Fed. Cir. 2016).  "Under this inquiry, [courts] evaluate the focus of the

18   claimed advance over the prior art to determine if the character of the claim as a whole, considered

19   in light of the specification, is directed to excluded subject matter."  *Trading Techs. Int'l, Inc. v.*

20   *IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (internal quotation marks and citation omitted).

21   When a claim recites "a desired function or outcome, without providing any limiting detail that

22   confines the claim to a particular solution to an identified problem," the "functional nature of the

23   claim confirms that it is directed to an abstract idea."  *Affinity Labs of Tex., LLC v. Amazon.com*

24   *Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).  The "essentially result-focused, functional character

25   of claim language has been a frequent feature of claims held ineligible under § 101, especially in

26   the area of using generic computer and network technology."  *Elec. Power Grp., LLC v. Alstom*

27   *S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).  Finally, there is no need to analyze every claim where

28   "all the claims are 'substantially similar and linked to the same abstract idea.'"  *Content Extraction*

United States District Court
Northern District of California

1  *& Transmission LLC*, 776 F.3d at 1348.

2       If the claims are directed to an abstract idea, courts proceed to step two.  At step two,

3  courts "consider the elements of each claim both individually and as an ordered combination" to

4  determine "whether [the claim] contains an inventive concept sufficient to transform the claimed

5  abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 217, 221 (internal quotation

6  marks and citation omitted).  "Stating an abstract idea while adding the words 'apply it' is not

7  enough for patent eligibility.  Nor is limiting the use of an abstract idea to a particular

8  technological environment."  *Id.* at 223 (internal quotation marks and citations omitted).  Instead,

9  this test "is satisfied when the claim limitations involve more than performance of well-

10  understood, routine, and conventional activities previously known to the industry."  *Berkheimer v.*

11  *HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (internal quotation marks, alteration, and citation

12  omitted).  Both steps of the *Alice* inquiry are informed by "the claims in light of the written

13  description."  *Amdocs (Isr.) Ltd.*, 841 F.3d at 1299.

## IV.    DISCUSSION

15       Poly contends that the asserted patents fail at both steps of the *Alice* inquiry.  First, at step

16  one, Poly argues that "the asserted patents are directed to the abstract idea of wireless

17  communication over a network."  ECF No. 80 at 13.  Second, at step two, Poly argues that "the

18  claims recite no inventive concept outside the abstract realm."  *Id.* at 27.

### A.    Abstract Idea

20       Poly contends that the asserted patents fail *Alice* step one because "the asserted patents are

21  directed to the abstract idea of wireless communication over a network."  *Id.* at 13.  Koss does not

22  dispute that "wireless communication over a network" is "an abstract idea," ECF No. 82 at 7, but

23  contends that the claims of the asserted patents are not directed to the abstract idea of wireless

24  communication over a network.

25       Poly argues that although the asserted patents nominally concern audio listening

26  apparatuses, the focus of the patents is the abstract communication over a wireless network.  ECF

27  No. 80 at 13-14.  Poly contends that Koss, while purporting to claim an invention, "merely takes

28  the wireless connectivity that already existed for devices that were not 'in-ear type phones' and

United States District Court
Northern District of California

1  applies it to previously wired in-ear phones, resulting in the claimed 'wireless earphone' that

2  connects to generic, conventional wireless networks." *Id.* at 14.  It contends that the patents "do

3  not purport to recite any improvement to wireless technology itself."  *Id.*

4  **1. The '025 Patent: Claim 1**

5  Poly contends that Claim 1 of the '025 patent, which is the only claim of the '025 patent

6  Koss cites in its complaint and its sole independent claim, is directed toward the abstract idea of

7  wireless communication.  Poly argues that it "recites a system comprising a digital audio player

8  and a wireless headphone assembly that communicate with one another wirelessly," and that "[t]he

9  language of claim 1, read in light of the specification, makes clear that the claim is directed to

10  wireless communication." *Id.* at 15.  That is because the sole difference between the claimed

11  system and previous audio players is the patent's wireless functionality.  Poly argues that the other

12  features in the claim – for example, processor, rechargeable battery, microphone, and network-

13  connected server – are generic and found in any conventional audio or computer system.  Poly

14  argues this makes Claim 1 of the '025 patent directed toward an abstract idea.

15  Koss responds that "Claim 1 of the '025 Patent is directed towards a specific system, a

16  digital audio player and a headphone assembly that are not physically connected.  The headphones

17  of the assembly comprise two distinct earphones, a processor, and a microphone, among other

18  discrete hardware components that, collectively, provide for an improved headphone assembly."

19  ECF No. 82 at 14.  Koss argues that "[t]he claim language itself compels a conclusion of patent

20  eligibility on its face because the '025 Patent claims a specific system, comprising a device (i.e., a

21  mobile, digital audio player that stores digital audio content) and an apparatus (i.e., a headphone

22  assembly; first and second earphones), as well as requires additional hardware components, such

23  as an antenna, acoustic transducer, processor, a remote, network-connected server, rechargeable

24  battery, a microphone, and a user-control component."  *Id.*  In short, Koss argues that "the claims

25  are directed towards an apparatus with specific limitations" not the abstract idea of wireless

26  communication over a network.  *Id.* at 15.

27  The Court finds that Claim 1 of the '025 patent is directed toward an abstract idea.

28  Notwithstanding Koss's rhetoric, it is plain from the patent that the patent's claimed inventive

1   concept is the use of wireless technology to connect the disparate parts of an audio playback

2   system.  That the patent recites the specific components of such a system – i.e., digital audio

3   player, earphones, etc. – does not change this fundamental fact.  "[U]nder well-settled law, that [a]

4   claim recites a mechanical device is not determinative of whether it is in fact directed to an

5   abstract idea."  *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-cv-04738-WHO, 2021 WL

6   4148651, *8 (N.D. Cal. Sept. 13, 2021) (citation omitted); *ChargePoint, Inc. v. SemaConnect,*

7   *Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019) (citation omitted) (claims reciting "a physical machine

8   that is quite tangible . . . is not dispositive" to abstractness).  If it were otherwise, "patent

9   eligibility [would] 'depend simply on the draftsman's art'": an abstract idea could become

10  patentable simply by adding a description of a physical object that embodies the abstract idea.

11  *ChargePoint, Inc.*, 920 F.3d at 770 (quoting *Alice*, 573 U.S. at 244).

12          Koss points to nothing in Claim 1 of the '025 Patent (or its specification) that suggests the

13  physical components of the '025 Patent – as opposed to its *wireless* functionality – are the focus of

14  the patent.  *See id.* at 766 ("[T]he specification [is] helpful in illuminating what a claim is 'directed

15  to.'" (citation omitted)).  Its recitation of generic physical elements – which Koss "makes no claim

16  [to have] invented," *Affinity Labs of Tex., LLC*, 838 F.3d at 1269, or improved – only reinforces

17  that conclusion.  Indeed, much like the claim that the Federal Circuit found abstract in

18  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019), the major

19  difference between the prior art and Koss's claimed invention is that the claimed invention is

20  wireless, with the attendant benefits that such a system provides.  *See* '025 patent at 1:47-2:2

21  (describing that the innovation solves the problem that a "cord . . . between the headphones and

22  the data storage unit can be cumbersome and annoying to users, and . . . limits the physical

23  distance between the data storage unit and the headphones").  This is not enough to remove the

24  patent from the realm of abstract idea:  simply because a "claimed invention transmits data

25  wirelessly and therefore does not rely on a wired path is not itself a technological improvement,

26  but rather simply a feature of wireless communication" which is well understood.  *Chamberlain*

27  *Grp.*, 935 F.3d at 1347.

28          Nor is the claim non-abstract because it "focus[es] on a specific means or method that

United States District Court
Northern District of California

improves [preexisting] technology." *Chamberlain Grp.*, 935 F.3d at 1347. Nothing in the claim, for example, suggests that the physical components improve the technology of wireless communication. The benefits Koss claims "are benefits that flow from *performing*" [wireless communication in the earphone setting. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) (emphasis added). To the contrary, the specification itself admits that "cordless headphones that connect wirelessly . . . have been proposed." The difference, the specification continues, is that these "are not *in-ear* type phones," which were otherwise "[o]ften" found in the prior art with an "associated cord." '025 patent at 1:46-47, 1:57-61 (emphasis added). In other words, the claimed invention takes the wireless network functionality that already existed for wireless headphones and applies it to wireless *earphones*. It is thus clear from Claim 1 of the '025 Patent that "the *focus* of the claim is on the abstract idea of network communication for device interaction." *ChargePoint, Inc.*, 920 F.3d at 770 (emphasis added). Claim 1 of the '025 Patent is therefore directed toward the abstract idea of wireless communication under *Alice* step one.

### 2. The '325 Patent: Claim 1

The Court's analysis of Claim 1 of the '325 Patent mirrors its analysis in the prior section. Koss again points to the physical components of Claim 1 of the '325 Patent, arguing that it "is directed towards a specific apparatus, two headphones that are not physically connected, the headphones comprising a body, a bud, a curved hanger bar, a microphone, and an antenna, among other discrete hardware components that, collectively, provide for an improved headphone." ECF No. 82 at 12-13. And Koss again contends that "[t]he claim language itself compels a conclusion of patent eligibility on its face" given that it "claims an apparatus" that has "specific structural limitations," and requires certain "hardware components." *Id.* at 13.

Koss's own arguments lead to the conclusion that the distinction Koss draws between Claim 1 of the '325 Patent and prior art is focused on the *wireless* capability, not any of the recited physical components in the claim. That is because the physical components Koss points to are merely generic physical elements of prior art that are incidental to the real focus of the claim: wireless communication. *See Chamberlain Grp.*, 935 F.3d at 1346-48 (finding abstract claims that merely described an abstract result – "wirelessly communicating status information" – using "off-

1    the-shelf" processes and machinery, i.e., a "controller, interface, and wireless data transmitter").

2    Claim 1 of the '325 Patent is therefore directed at an abstract idea under *Alice* step one.

3                    **3.    The '155 Patent: Claim 1**

4            Again, the Court's analysis of this claim tracks the analysis of the other prior two claims.

5    Koss again points to the physical components of Claim 1 of the '155 Patent, arguing that it "is

6    directed towards a specific apparatus, a headphone assembly (i.e., two earphones), the earphones

7    comprising, an antenna, wireless communication circuit, and a rechargeable battery, among other

8    discrete hardware components that, collectively, provide for an improved headphone assembly."

9    ECF No. 82 at 15.  And Koss again argues that "[t]he claim language itself compels a conclusion

10   of patent eligibility on its face" because of the physical apparatus and hardware components it

11   describes. *Id.*  For the same reasons why the other two claims are directed toward an abstract idea

12   under *Alice* step one, so too is Claim 1 of the '155 Patent directed at an abstract idea.[1]

13                    **4.    The '934 Patent: Claim 1**

14           The Court's analysis of this claim is consistent with the analysis of prior three claims.

15   Once again, Koss argues that because Claim 1 of the '934 Patent recites a physical apparatus with

16   certain hardware components, it is non-abstract.  But for the same reasons why the other three

17   claims are directed toward an abstract idea under *Alice* step one, so too is Claim 1 of the '934

18   Patent directed at an abstract idea.[2]

19   _____

20   [1] Nor is the Court persuaded by Koss's argument that because the claim recites the ability "to
     transition automatically from playing digital audio content received wirelessly by the headphone

21   assembly via a first wireless network to playing digital audio content received wirelessly by the
     headphone assembly via a second wireless network," ECF No. 82 at 15-16 (citing '155 patent at

22   cl. 1), it is therefore non-abstract.  *See, e.g., Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x
     495, 498 (Fed. Cir. 2020) (explaining that when a "claim does not specify *any particular metric or*

23   *method* for ranking [stations]," then "[t]he entirety of the claim is simply the abstract idea and
     nothing more" (emphasis added)).

24   [2] The major difference between Koss's arguments as to Claim 1 of the '934 Patent and the others
     is that Koss argues that the specification here states that the "memory units [recited in the claim]

25   may store firmware that is executed by the processor unit [and e]xecution of the firmware by the
     processor unit [] may provide various functionality for the earphone."  ECF No. 82 at 16-17

26   (citing '934 patent at 7:43-46).  It is not clear how that saves the claim from being directed at an
     abstract idea, because the claim itself is not directed toward the memory units.  And the

27   specification Koss cites does nothing more than describe – by another name – wireless
     communication over a network.  *ChargePoint*, 920 F.3d at 766 (explaining that "the abstract idea

28   of communicating requests to a remote server and receiving communications from that server" is
     no different from describing "communication over a network").  At any rate, "[e]ven a

**5.      The '498 Patent: Claim 1**

The Court's analysis of this claim follows its prior analysis.  As with the other claims, Koss argues that because Claim 1 of the '498 Patent recites a physical apparatus with specific hardware, it is therefore *directed* toward a non-abstract idea.  *See* ECF No. 82 at 18 ("The claim language alone compels a conclusion of patent eligibility on its face because the '498 Patent claims a specific apparatus (i.e., a pair of first and second wireless earphones) and requires additional hardware components such as an acoustic transducer, a first system-on-chip (SOC) comprising, a wireless communication circuit, a processor circuit, and a memory unit n [sic] communication with the first processor circuit for storing firmware updates pushed to the headphones from a remote network server." (citing '498 Patent at 6:30-55, Fig. 3)).  Koss argues that because "[t]he specific limitations of discrete hardware components required by claim 1[] collectively provide for an improved apparatus (i.e., headphones)" – for example, because they state that "the transceiver circuit 100 may be implemented as a single integrated circuit (IC), such as a system-on-chip (SOC), which is conducive to miniaturizing the components of the earphone 10, which is advantageous if the earphone 10 is to be relatively small in size, such as an in-ear earphone," *id.* (citing '498 Patent at 6:45-50) – that means Claim 1 of the '498 Patent is not directed toward an abstract idea.  But as the Court has explained, that a claim recites physical components does not mean that it is directed toward a non-abstract idea.  Nor does it mean that it is directed toward a non-abstract idea simply because it recites generic hardware components – here, a miniaturized computer – that could satisfy the claim.  To the extent Koss argues that the miniaturized computer is itself what Claim 1 of the '498 Patent is directed to, the specification does not support that interpretation: it at most "merely us[es] as a tool" the miniaturized computer to "improve[ ] the abstract concept" of wireless communication.  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).  In short, although Claim 1 of the '498 Patent mentions physical components, it is directed toward the abstract idea of wireless

_____

specification full of technical details . . . may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea," which is "why any reliance on the specification in the § 101 analysis must always yield to the claim language."  *Id.* at 769.

communication.

### 6.   The '852 Patent: Claim 1

As with the other claims at issue, Koss argues that the language in Claim 1 of the '852 Patent "compels a conclusion of patent eligibility on its face because the '852 Patent claims a system comprising a wireless headphone assembly (i.e., first and second earphones) and a mobile computing device with a graphical user interface thereon to allow the user to select an audio control setting for the wireless headphones." ECF No. 82 at 19.  The major difference between Koss's arguments for this claim and the others is that Koss argues that the physical components the claim recites "allow for a more tunable user experience not present in the prior art"—in particular, because it describes "a mobile computing device with a graphical user interface" which "allow[s] the user to select an audio control setting for the wireless headphone." ECF No. 82 at 14 (citing Claim 1 of the '498 Patent at 2:17-21, 13:40-42).  But adding a generic computer to an abstract idea does not render it non-abstract. *See Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 934 (N.D. Cal. 2015), aff'd, 670 F. App'x 704 (Fed. Cir. 2016) (explaining that reciting a generic computer does not turn an patent-ineligible abstract idea into a patent-eligible invention); *see also PlanetID, LLC v. Digify, Inc.*, No. 19-CV-04615-JST, 2021 WL 567371, at *5 (N.D. Cal. Jan. 12, 2021), *appeal dismissed*, No. 2021-1650, 2021 WL 3629352 (Fed. Cir. Apr. 19, 2021) (explaining, in related context, that abstract ideas do not become non-abstract because they recite generic computer and network components).  Claim 1 of the '852 Patent is therefore directed toward an abstract idea.

### 7.   Dependent Claims

A "court need not address patent eligibility of each claim separately if the claims are 'substantially similar and linked to the same abstract idea.'" *Quad City Pat., LLC v. Zoosk, Inc.*, 498 F. Supp. 3d 1178, 1184 (N.D. Cal. 2020) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).  "Instead, the analysis may be limited to a 'representative claim' if the 'patentee does not present any meaningful argument for the distinctive significant of any claim limitations not found in the representative claim' or 'if the parties agree to treat the claim as representative.'" *Id.* (citing *Berkheimer v. HP Inc.*, 881 F.3d

1    1360, 1365 (Fed. Cir. 2018)).

2          In one sentence in its reply, Koss cites to a list of "additional claims" to argue patent

3    eligibility.  ECF No. 82 at 20-21.  Koss argues that those "dependent claims . . . further limit the

4    scope of the independent claims and add additional details."  ECF No. 82 at 20.  But Koss presents

5    no "meaningful argument" about *any* of the dependent claims.  "Courts may treat a claim as

6    representative in certain situations, such as if the patentee does not present any meaningful

7    argument for the distinctive significance of any claim limitations not found in the representative

8    claim or if the parties agree to treat a claim as representative."  *Berkheimer*, 881 F.3d at 1365.

9    That makes this case unlike *Berkheimer*, where the Federal Circuit held that the district court erred

10   in treating a claim as "representative" because that claim was "the only asserted independent

11   claim" and the patentee "focused 'all of his *primary* arguments'" on the independent claim.  *Id.*

12   Koss merely lists a few examples with citations and then argues, in a conclusory fashion, that

13   "each [of the dependent claims] is another reason the claims are directed to patent eligible subject

14   matter."  ECF No. 82 at 21.  Courts faced with such conclusory arguments reject them and treat as

15   representative the claims for which meaningful argument has been presented.  *See, e.g., Quad City*

16   *Pat., LLC v. Zoosk, Inc.*, 498 F. Supp. 3d 1178, 1184 (N.D. Cal. 2020) (holding that a "conclusory

17   statement does not represent 'meaningful argument' that any dependent claim limitations presents

18   an inventive concept"); *Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 944 (N.D. Cal.

19   2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020) (rejecting arguments about dependent claims that

20   are not "meaningful"); *BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844 GW(KSX), 2018 WL

21   4847053, at *11 (C.D. Cal. Aug. 21, 2018) (same); *see also Skillz Platform Inc. v. Aviagames Inc.*,

22   No. 21-CV-02436-BLF, 2022 WL 783338, at *8 (N.D. Cal. Mar. 14, 2022) (treating as

23   representative a claim when the patentee did "not argue that any of the dependent claims are

24   directed to subject matter that is materially different from [that claim], nor [did] it argue that any

25   of the dependent claims contain[ed] an inventive concept that [was] not already contained in [that

26   claim]").  The Court takes that path here.

27          **B.    Inventive Concept**

28          An inventive concept "reflects something more than the application of an abstract idea

12

using well-understood, routine, and conventional activities previously known to the industry.  It must be enough to transform an abstract idea into a patent-eligible invention." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, —— U.S. ——, 140 S. Ct. 907 (2020) (internal quotation marks and citations omitted).

"Once the abstract idea is removed," the Court must ask whether there are "allegations in the complaint or patent" that support that the claim is an "inventive concept or that the combination of claim limitations was not well-understood, routine, or conventional." *Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*, No. 3:19-CV-02659-JD, 2020 WL 1307016, at *5 (N.D. Cal. Mar. 19, 2020).  "[T]he relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine," but "whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional." *BSG Tech*, 899 F.3d at 1290.

Poly argues that when the abstract idea of wireless communication is removed, "the claims recite only generic components of conventional headphones or computer network systems described solely in terms of their function, such as 'earphones,' 'processor circuit,' 'memory unit,' 'audio content source,' 'battery,' 'microphone,' etc.," ECF No. 82 at 27, which cannot save the claims from abstractness.  Poly argues that the admissions in the patents' specifications only serve to underscore that there is no inventive concept: the wireless communication, the operating system details for the computer-related devices, and the software that can be used to execute the claimed functions are all ordinary – and the specifications admit as much.  *See, e.g.,* ECF No. 82 at 28 (arguing that the "common specification" indicating that "any [] suitable wireless communication protocol" will suffice for practicing the claims shows that the wireless communication practiced by the claims was common when the patents were issued) (citing '025 pat. 4:55–59); *id.* (arguing that the patents "admit that 'operating system details for the various computer-related devices and systems are not described' because they are found in 'a typical processor or computer system' and 'are well known in the art'") (citing '025 pat. 16:45–50); *id.* (arguing that "the patents admit that the claimed functions 'may be executed by a processor or any other similar computing device';

'embodiments described herein may be implemented in a computer software using any suitable computer software language type; and 'the processes associated with the present embodiments may be executed by programmable equipment, such as computers or computer systems and/or processors'") (citing '025 pat. at 16:56–17:10). In short, because wireless communication is the abstract idea the claims are directed to, Poly argues that there is no innovation: nothing inventive remains because the patents' innovations all ultimately reduce to the idea of wireless earphones.

Koss makes two primary arguments in response. First, Koss argues that it "has identified specific claim elements that are 'non-conventional and non-generic' and furthermore, has shown that the combination of those elements is non-conventional and non-generic.'" ECF No. 82 at 22. In support, Koss primarily marshals the portion of the specification in the '934 patent that refers to "memory units . . . [which] may store firmware that is executed by the processor unit [and e]xecution of the firmware by the processor unit [] may provide various functionality for the earphone," for which it cites a range of 500 lines of the '934 patent specification it says support that "various functionality." *Id.* (citing '934 patent at 7:43-546). Koss additionally provides a string cite to portions of the '934 patent specification, arguing that they reveal "numerous, non-conventional, and non-generic benefits," but without discussing what those benefits actually are. *Id.* (citing '934 patent at 9:14-28, 10:4-35, 10:49-54, 14:2-62, 15:24-34, 15:50-61). Second, Koss argues that its first amended complaint must be taken as true and that it "pleads and properly identifies the improvements the claimed inventions provide." ECF No. 82 at 23. Koss then cites several portions of its complaint, which it says "clearly allege the improvements of the claimed headphone assemblies and systems" which "are grounded in the specifications and file histories" of the patents. *Id.* Koss argues that, in light of those allegations, Poly has failed to prove that the claim limitations of the patents were well-understood, routine, conventional activities known to the industry and that understanding what is well-understood, routine, and conventional to a skilled artisan "is a question of fact and cannot be disposed of at this stage." *Id.* at 23-24.

Koss fails to establish any inventive concept. As an initial matter, Koss is wrong to argue that simply because Koss states in its complaint that the claims improve art that existed at the time, the Court cannot dispose of the inventiveness question at the pleadings stage. Koss does

make statements concerning inventiveness in its complaint. *See, e.g.*, ECF No. 71, ¶¶ 64, 77, 90, 103, 116, 129 (alleging that "the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention"). But conclusory allegations do not suffice to establish inventiveness. *Linquet Techs., Inc. v. Tile, Inc.*, 559 F. Supp. 3d 1101, 1106 (N.D. Cal. 2021) (holding that "the ostensible [factual] disputes are based on wholly conclusory allegations in the [operative complaint], and so are not a bar to moving forward" on dismissal at the pleadings stage); *see also Rothschild Dig. Confirmation, LLC v. Skedulo Holdings Inc.*, No. 3:19-CV-02659-JD, 2020 WL 1307016, at *2 (N.D. Cal. Mar. 19, 2020) (holding that conclusory statements that a claim "represent[ed] an inventive concept that was not well-understood, routine, or conventional at the time of filing of the [] patent" were "not enough to create a factual dispute").

The non-conclusory improvements Koss alleges are directed toward the abstract idea of wireless communication. *See, e.g.*, ECF No. 71 ¶ 34 (alleging that the claimed invention is "wireless headphones" that can be "wirelessly connected to some kind of a source, be it a handheld computing device or in the cloud"); *id.* ¶ 34 (alleging that Koss "recognized that the future was a wireless world . . . that went beyond traditional hardwired" electronics and applied it to its "area of expertise: the headphone"). But inventiveness focuses on whether "*[o]nce the abstract idea is removed*," there is an "inventive concept" or "combination of claim limitation [that] was not well-understood, routine, or conventional." *Rothschild Digital Confirmation, LLC*, 2020 WL 1307016, at *5. The wireless communication improvements Koss relies on cannot save its claims from abstractness.

Nor do Koss's citations to generic elements beyond wireless communication establish inventiveness. *Rothschild Digital Confirmation, LLC*, 2020 WL 1307016, at *3 ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'"). All the more so because Koss's "briefs do not offer a clear explanation" as to how "any combination of [the

generic] elements" in its claims establish an inventive concept unknown in the art before Koss's patents. *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838, at *3 (Fed. Cir. July 14, 2021).

In short, Koss's conclusory statements of inventiveness do not save its patents at *Alice* step two because its complaint and opposition demonstrate that the non-abstract components of Koss's claims were previously well-known in the industry.

## CONCLUSION

For the foregoing reasons, the Court finds the claims of the '325 Patent, '025 Patent, '155 Patent, '934 Patent, '498 Patent, and the '852 Patent invalid under 35 U.S.C. § 101, and dismisses Koss's first amended complaint. Although Koss has already amended its complaint once in response to a prior motion to dismiss, this order represents the first time these issues have come before the Court, and the Court therefore grants leave to amend.

Koss may file an amended complaint within twenty-one days of this order. Failure to file a timely amended complaint will result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated: November 16, 2022

_____
JON S. TIGAR
United States District Judge